UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| JONATHAN MONSARRAT, ) | |
| ) | |
| *Plaintiff*, ) | |
| ) | CIVIL ACTION NO. 20-cv-10810-PBS |
| v. ) | |
| ) | |
| RON NEWMAN ) | |
| ) | **FIRST AMENDED** |
| ) | **VERIFIED COMPLAINT** |
| *Defendant*. ) | |
| ) | |

Plaintiff JONATHAN MONSARRAT ("Plaintiff" or "Monsarrat") for his first amended verified complaint against Defendant RON NEWMAN ("Defendant" or "Newman") by and through his counsel on personal knowledge as to his own actions and on information and belief as to the actions, capabilities and motivations of the Defendant hereby alleges the following:

## NATURE OF THE ACTION

1. This suit arises out of Defendant's defamatory statements of and concerning Plaintiff and is also brought for copyright infringement as without consent and without right Defendant has copied and published Plaintiff's copyrights as an integral part of Defendant's defamatory statements falsely accusing the Plaintiff of despicable crimes.

## PARTIES

2. Plaintiff Jonathan Monsarrat, an individual currently residing in Attleboro, Massachusetts, holds a Bachelor of Science degree in Electrical Engineering and Computer Science from the Massachusetts Institute of Technology and an Master's Degree in Business

Administration from MIT's Sloan School of Management. A long time entrepreneur, Monsarrat is currently a video game entrepreneur developing an augmented reality internet interactive video game that will be marketed to young adults of both sexes.

3. Defendant Ron Newman is an individual who resides in Somerville, Massachusetts.

## JURISDICTION AND VENUE

4. The Court has subject matter jurisdiction over this Complaint pursuant to 28 U.S.C. §1338, and the Copyright Act, 17 U.S.C. §101 *et seq*, and pendent jurisdiction over the state law defamation claim involving the same parties and arising under a common nucleus of operative facts.

5. The Court has personal jurisdiction over the Defendant who resides in this District; and, the unlawful copying and infringement was done, the defamatory statements were made and the injuries suffered within this District.

6. Venue is proper in this District pursuant to 28 U.S.C. §1391 and §1400(a) in that Defendant is an individual subject to personal jurisdiction in this District; and a substantial part of the events giving rise to the claims asserted occurred in this District.

## COUNT I-DEFAMATION

7. LiveJournal is a Russian social networking service where users can keep a blog, journal or a diary on which until April 2017 posts by users could include without restriction pornography and obscene language. According to Wikipedia,

https://en.wikipedia.org/wiki/LiveJournal on April 4, 2017 LiveJournal changed its terms of service prohibiting users from posts or actions "contradictory to the laws of the Russian Federation," and stating that blogs "with more than 3,000 daily visitors are classified as media outlets and may not be published anonymously, are responsible for the dissemination of unverified information, and are restricted from posting pornography, obscene language or 'extremist materials.'"

8. Beginning in 2010 on a "Davis Square" a publicly accessible, and indexed by search engines, discussion group, at http://davis-square.livejournal.com, hosted by LiveJournal, a number of pseudonymous persons by means of both repeated references to a so-called "jonmon" page on the EncyclopediaDramatica website that had been posted by one or more of the same LiveJournal anonymous posters and their individual anonymous posted comments on the LiveJournal blog falsely accused Plaintiff of despicable crimes including being a pedophile, specifically a "sexual predator," a "Rapist/Con-Man," and a "child predator."

9. The Defendant was the moderator of the LiveJournal Davis Square discussion group and offered editorial like comments concerning this online smear attack on Plaintiff.

10. Those LiveJournal defamatory posts, along with their references to the pejorative EncyclopediaDramatica "jonmon" page and with repeated links to the EncyclopediaDramatica "jonmon" page exposed Plaintiff to public hatred, contempt, ridicule and disgrace.

11. In early 2013, Plaintiff brought suit in Massachusetts state court against Defendant, another person and the pseudonymous defamers styled *Jonathan Graves Monsarrat v.* [REDACTED]*, Ron Newman and Doe defendants*, Civil Action No. 13-0399-C, seeking damages essentially for defamation. Defendant was served with the amended complaint.

12. In June 2013 the state court action against Newman and others was dismissed with prejudice.

13. In March 2014 in an affidavit, executed under the penalties of perjury, by upon information and belief the original poster of the EncyclopediaDramatica "jonmon" page attested that (i) her allegations were false, (ii) Monsarrat had not in any way acted inappropriately, (iii) she had removed from the LiveJournal website and all internet sites all statements she had made about Monsarrat; and apologized for harm she had caused Monsarrat.

14. On March 2, 2017 Plaintiff seeking a takedown of the EncyclopediaDramatica "jonmon" page, repeatedly referenced in the LiveJournal defamatory posts about him, brought a copyright infringement action in this Court against the initially unknown owner(s) of the EncyclopediaDramatica website, styled *Jonathan Monsarrat v. GOTPER6067-00001 et al,* in the United States District Court, District of Massachusetts, civil action no. 17-cv-10356-PBS.

15. Upon information and belief Defendant learned of Plaintiff's 2017 action against EncyclopediaDramatica and kept apprised of developments in the case by means of the publicly accessible docket entries at https://www.pacer.gov/ and/or one or more legal news websites.

16. On or shortly after April 30, 2017, Defendant made copies of the no-longer actionable individual false and defamatory statements originally posted by various anonymous persons on the LiveJournal website.

17. From and after Defendant's copying of the LiveJournal defamatory statements to the date of this Complaint those defamatory statements as originally individually posted by the anonymous LiveJournal users have remained on the LiveJournal website.

18. Different from LiveJournal, Dreamwidth is an interactive computer service, established, according to Wikipedia, https://en.wikipedia.org/wiki/Dreamwidth, more than ten

years ago by former LiveJournal staff "born out of a desire for a new community [apart from LiveJournal] based on open access, transparency, freedom and respect." According to Wikipedia, like LiveJournal, Dreamwidth provides "shared or group journals called 'communities.'"

19. The Dreamwidth website is materially different from the LiveJournal website in that, among other things, by way of example and not limitation, its respect for diverse communities such the LBGT community, its openness to content which after April 4, 2017 is no longer welcome on LiveJournal, and is aimed at a fundamentally different audience.

20. On or shortly after April 30, 2017, as a user of the Dreamwidth website, Defendant published on Dreamwidth a compilation of the copies he had made of the LiveJournal defamatory posts whose words had been both created and then originally published on LiveJournal by the anonymous users.

21. Defendant's so republished posts in addition to the repeated references and hyperlinks to the EncyclopediaDramatica "jonmon" page included specific false and defamatory statements by which Defendant individually communicated to both the Dreamwidth audience, and others worldwide via search engine users interested in Plaintiff or considering a potential investment in Plaintiff's augmented reality interactive video game start up business to be marketed to young adults of both sexes, that as of, or shortly after, April 30, 2017:

(ii) "[Plaintiff] is a child "molester;"

(iii) "[Plaintiff] is a sexual predator in our community;"

(iv) "[Plaintiff] has a social rap sheet as long as my arm of sexual harassment and preying on young women who don't know better;"

(x) [Plaintiff] "habitually rape{s} strangers;"

(xi) [Plaintiff is a] "creepy staulker;"

(xii) "keeping teenagers away from creeps is part of every community's duty;"

(xiii) [Plaintiff is a] "statutory raping douchbag;"

(xiv) [Plaintiff] "lure{s} teenage girls;"

(xv) [Plaintiff] "repeatedly behave{s} in a predatory fashion;" and,

22. Upon information and belief Defendant so republished on Dreamwidth the no-longer actionable individual LiveJournal anonymous defamatory posts intending to maliciously defame and discredit Plaintiff and with the purpose and effect of having others repeat such false and defamatory statements and thereby further damage Plaintiff's reputation.

23. By his actions Defendant took ownership of the collection of defamatory speech and his republication on an entirely different website triggered accrual of an entirely new cause of action against him for defamation under Massachusetts law.

24. As a user of the Dreamwidth website by his republication thereon of speech originally created many years before by numerous anonymous speakers Defendant:

    (i) was the proximate cause of the alleged wrongdoing; and/or

    (ii) at a minimum materially contributed to its unlawfulness.

25. Defendant is the legally responsible information content provider of this actionable libel published on Dreamwidth and is not entitled to immunity under the Communications Decency Act, 47 U.S.C. §230.

26. In April 2017, the owner of the EncyclopediaDramatica website, about to be served with Plaintiff's complaint against him, took down the so-called jonmon page from EncyclopediaDramatica.

27.     Even after the takedown of the EncyclopediaDramatica jonmon page the presence on the internet of statements and/or insinuations referencing those false EncyclopediaDramatica accusations of despicable crimes continued to injure Plaintiff's reputation and impair development of his start up augmented reality video game.

28.     In October 2017, an international investment firm, considering an investment in Plaintiff's start up Augmented Reality video game informed Plaintiff:

> Thank you for taking the time to put together the materials for our Investment Committee.
>
> After careful discussion with our team, we will have to pass on the Monsarrat investment opportunity. While we are a huge fan of what you are building, your track record, your team, and the partnership you've inked with the [REDACTED], we ultimately decided to pass due to the negative press you have received in the pass{t} as we have found that this can have an impact on equity crowdfunding raises given their very public nature.
> Please note, this was a very difficult decision for us to make. We are big believers in Monsarrat and your vision and expect you will be a force to be reckoned with in the AR gaming space.

29.     On October 18, 2017, in his action against the then identified owner of the EncyclopediaDramatica website Plaintiff moved to file under seal, out of the public record, the entire "jonmon" EncyclopediaDramatica page. Plaintiff's contention was that the entire jonmon page should be adjudged child pornography with its explicit references to pedophilia including internet shorthand terms Pedo and Pedobear and at the bottom of the page featuring an advertisement for the porn site F__ckbook.com™ with images of five naked or partially clad very young females three of whom were engaged in sexually explicit, and in at least one instance victimized by violence:

> • one naked, apparently screaming, young female who appears to be on her hands and knees with a partially visible person behind her;
> • one young female with no visible clothing performing fellatio on a visibly erect penis; and,
> • one naked young, apparently prepubescent female, whose only visible clothing, a thong, is being pulled away by a partially visible hand.

Judge Saris granted the motion and the entire "jonmon" EncyclopediaDramatica page was filed under seal.

30. However before Judge Saris had acted and granted the motion, in opposing the motion to keep the purported pornographic and pedophilia content out of the publicly accessible record the owner of the EncyclopediaDramatica website filed in the publicly accessible record the defamatory "jonmon" EncyclopediaDramatica page redacting the photos from the porn site advertisement.

31. Upon information and belief Defendant was aware the defamatory "jonmon" EncyclopediaDramatica page was in the publicly accessible public record of the case and could be viewed on line at https://www.pacer.gov/ as well as at legal news websites.

32. On December 26, 2017, Defendant posted on Dreamwidth a piece "***JonMon loses another lawsuit, this time against Encyclopedia Dramatica.***"

> Jonathan Monsarrat, also known around here as "JonMon", just lost another lawsuit. This one was a copyright claim against Encyclopedia Dramatica.
> Long-time readers of this forum and its LiveJournal predecessor will recall that JonMon sued me, former Somerville Journal editor [REDACTED], and 100 local "John Does" in April 2013. Thanks to excellent pro bono representation by hotshot [REDACTED] lawyer [REDACTED], we were able to persuade JonMon to dismiss his suit against us five weeks later.
> (for more background, see the jonmon tag.)
> tags: jonmon.

33. Defendant published his December 2017 follow up about the Plaintiff, upon information and belief to encourage the Dreamwidth community as well as others worldwide, via search engines with two more recent 2017 timestamps, to:

(i) read Defendant's false and defamatory statements on his Dreamwidth "jonmon" page; and/or

(ii) to access and then read on Pacer, or on legal news websites, the original EncyclopediaDramatica jonmon page.

34. By so inviting others to view his prior defamatory posting and/or the original EncyclopediaDramatica jonmon page Defendant intended to maliciously defame and discredit Plaintiff and with the purpose and effect of having others repeat such false and defamatory statements and thereby further damage Plaintiff's reputation.

35. On March 19, 2020, Plaintiff wrote to Defendant demanding that "to avoid another lawsuit" Defendant must effect a retraction, a take down, of the defamatory statements.

36. By letter dated March 30, 2020 by his legal counsel Defendant refused Plaintiff's demands.

37. Not denying either the *per se* defamatory nature of the false statements of despicable crimes or that Plaintiff had suffered, and continued to suffer, harm to both his reputation and his business, in his counsel's March 30, 2020 letter Defendant took the position the defamation claim was "frivolous" as a matter of state law and that assuming there was a claim Defendant was immune from such suit pursuant to the Communications Decency Act, 47 U.S.C. §230.

38. Defendant's false and defamatory statements constitute libel *per se*, including that they accused Plaintiff of one or more crimes, and exposed Plaintiff to public contempt, ridicule, aversion, and disgrace, and induced an evil opinion of him in the minds of right-thinking persons.

39. Defendant's false and defamatory statements tended to injure Plaintiff in his entrepreneurial efforts developing an augmented reality video game to be marketed to young adults of both sexes.

40. Defendant's false and defamatory statements were intended to be specific statements of fact and are reasonably understood by those who read them, by those Dreamwidth users and search engine users, with the more recent time stamp, who access them to be specific factual claims that Plaintiff is a pedophile, a sexual predator of young girls.

41. Defendant made his false statements in reckless disregard of their truth or falsity and with malicious intent to destroy Plaintiff's reputation in a way that would destroy his efforts to develop a new business whose products would be marketed to young adults of both sexes.

42. As a result of Defendant's false and defamatory statements about him, Plaintiff has suffered substantial damages to be proven at trial.

43. Defendant's false and defamatory statements have caused, and continue to cause, Plaintiff economic damage, psychological pain and suffering, mental anguish and emotional distress and other direct and consequential damages and losses in amounts to be proven at trial.

## COUNT II - COPYRIGHT INFRINGEMENT

44. Plaintiff repeats and realleges every allegation contained in paragraphs 1 through 43 as if fully set forth herein.

45. Plaintiff is the author and registered owner and the holder of a certificate of registration issued by the United States Copyright Office for the copyrighted work starting "Violation of LiveJournal abuse policies" and ending "Monday at 12pm," US Copyright Office Registration No. TXu001823219 dated August 16, 2012.

46. On or shortly after April 30, 2017, without permission, consent or right to do so, Defendant reproduced and published on Dreamwidth Plaintiff's said copyright.

47. Defendant's act of infringement was willful, intentional, and purposeful, in disregard of, and indifferent to, the rights of Plaintiff.

48. As a direct and proximate result of Defendant's willful infringement of Plaintiff's copyright and exclusive right under copyright, Plaintiff is entitled to the maximum statutory damages pursuant to 17 U.S.C. §504(c)(2), in the amount of $150,000, or such other amounts as may be proper under 17 U.S.C. §504(c).

49. Plaintiff is entitled to his costs, including an award of reasonable attorneys' fees, pursuant to 17 U.S.C. §505.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Jonathan Monsarrat respectfully requests judgment against Defendant Ron Newman, awarding compensatory and consequential damages in amounts to be proven at trial; under the Copyright Act statutory damages and an award of attorney's fees; costs of suit; and, such other and further relief as the Court may deem just and proper.

## JURY DEMAND.

Plaintiff demands a trial by jury on all causes of action asserted within this complaint.

DATED: September __, 2020

> JONATHAN MONSARRAT,
> Plaintiff,
>
> By his attorneys,
>
> /*s/ Richard A. Goren*
> Richard A. Goren, Esq. BBO #203700
> Law Office of Richard Goren
> 29 Crafts Street, Suite 500
> Newton MA 02458-1461
> 617-933-9494
> rgoren@richardgorenlaw.com
>
> */s/ Ryan D. Sullivan*
> Ryan D. Sullivan (BBO#660696)
> rsullivan@curranantonelli.com
> Curran Antonelli, LLP
> 10 Post Office Square, Suite 800 South
> Boston, MA 02109
> 617-410-6340

## *VERIFICATION*

On this __ day of September, 2020, I, Jonathan Monsarrat, the Plaintiff in the above captioned case, hereby declare under the penalty of perjury that I make the foregoing allegations in part upon my own personal knowledge and in part upon the investigation of my counsel, and that to the best of my knowledge the allegations contained herein are true and correct, except as to the matters alleged on information and belief, and that as to those matters I believe them to be true.

> *ss/ Jonathan Monsarrat*
> Jonathan Monsarrat