UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| JONATHAN MONSARRAT, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 20-cv-10810-RGS |
| | ) | |
| v. | ) | **REQUEST FOR JUDICIAL NOTICE** |
| | ) | **OF EXHBITS TO MOTION TO** |
| RON NEWMAN, | ) | **DISMISS** |
| | ) | |
| Defendant. | ) | |
| | ) | |

Defendant Ron Newman ("Newman") respectfully requests that the Court deem Exhibits A through U, filed with his motion to dismiss, incorporated by reference in the operative First Amended Verified Complaint ("Complaint"), Doc. 9, or take judicial notice thereof pursuant to Federal Rule of Evidence 201, and consider them in deciding the motion to dismiss.

The Court "must consider the complaint, in its entirety, as well as other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss, including documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007). Those matters may be considered when considering either a plaintiff's failure to state a claim or a defendant's affirmative defenses. *In re Colonial Mortgage Bankers Corp.*, 324 F. 3d 12, 15-16 (1st Cir. 2003); *Nisselson v. Lernout*, 469 F.3d 143, 150 (1st Cir. 2006).

The Federal Rules of Evidence mandate that judicial notice be taken "if a party requests it and the court is supplied with the necessary information," Fed. R. Evid. 201(c)(2), and authorize it "at any stage of the proceeding." Fed. R. Evid. 201(d). Judicially noticed facts are those not "subject to reasonable dispute because" they are either "generally known within the trial court's territorial jurisdiction" or are capable of accurate and ready determination by resort to "sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b). Here, the requested

facts are not subject to reasonable dispute in that they are capable of accurate and ready determination by referring to "sources whose accuracy cannot reasonably be questioned." *Id*. Courts may consider such "documents the authenticity of which are not disputed by the parties" on a motion to dismiss. *Watterson v. Page*, 987 F.2d 1, 3 (1st Cir. 1993).

Further, "'when plaintiff fails to introduce a pertinent document as part of his pleading, defendant may introduce the exhibit as part of his motion attacking the pleading.'" *Fudge v. Penthouse Int'l, Inc.*, 840 F.2d 1012, 1015 (1st Cir. 1988) (quoting 5 C. Wright & A. Miller, *Federal Practice and Procedure* § 1327 at 489 (1969)). Plaintiff Jonathan Monsarrat ("Monsarrat") may not "thwart the consideration of a critical document merely by omitting it from the complaint." *Beddall v. State St. Bank & Trust Co.*, 137 F.3d 12, 17 (1st Cir. 1998). "Any other approach would seriously hinder recourse to Rule 12 motions[.]" *Id*.

I.    **Exhibits A through F, documents from *Newman I*, are incorporated in the Complaint by reference or subject to judicial notice.**

Exhibits A through E are documents Monsarrat filed in his 2013 lawsuit against Newman and others, *Monsarrat v. Filcman, Newman, and Does 1-100*, No. 1381-cv-00399 (Mass. Super. Ct. Middlesex Cty.) ("*Newman I*"). Exhibit F is the *Newman I* docket sheet.

| Exhibit | Content |
|---|---|
| A | *Newman I* First Amended Complaint and Jury Demand filed April 30, 2013 |
| B | *Newman I* First Amended Complaint Exhibit 3: Deb Filcman, *Not a question best answered by the Wheel*, Wicked Local Somerville/Somerville Blog, March 8, 2010 |
| C | *Newman I* First Amended Complaint Exhibit 4: Davis Square LiveJournal "Today's Somerville Police Blog" thread, davis-square.livejournal.com/2101375.html February 4-7, 2010 |
| D | *Newman I* First Amended Complaint Exhibit 12: Davis Square LiveJournal "Wheel Questions" thread, davis-square.livejournal.com/1870797.html, July 24-29, 2009 |
| E | *Newman I* Notice of Voluntary Dismissal with Prejudice filed June 7, 2013 |
| F | *Newman I* docket sheet |

The Complaint in this action places *Newman I* squarely at issue:

11.    In early 2013, Plaintiff brought suit in Massachusetts state court against

Defendant, another person and the pseudonymous defamers styled *Jonathan Graves Monsarrat v.* [REDACTED], *Ron Newman and Doe defendants*, Civil Action No. 13-0399-C, seeking damages essentially for defamation. Defendant was served with the amended complaint.

12.  In June 2013 the state court action against Newman and others was dismissed with prejudice.

Doc. 9 ¶¶ 11-12.

"It is well-accepted that federal courts may take judicial notice of proceedings in other courts if those proceedings have relevance to the matters at hand." *Kowalski v. Gagne*, 914 F.2d 299, 305 (1st Cir. 1990). "[A] court 'may look to matters of public record in resolving a Rule 12(b)(6) motion.'" *Colonial Mortgage Bankers*, 324 F.3d at 15-16 (*quoting Boateng v. InterAmerican Univ., Inc.*, 210 F.3d 56, 60 (1st Cir. 2000)). "Matters of public record ordinarily include 'documents from prior state court adjudications.'" *Giragosian v. Ryan*, 547 F.3d 59, 66 (1st Cir. 2008) (*quoting Boateng*, 210 F.3d at 60). *See E.I. Du Pont de Nemours & Co. v. Cullen*, 791 F.2d 5, 7 (1st Cir. 1986) (taking judicial notice of complaint filed in Massachusetts state court); *United States v. Florentino*, 385 F.3d 60, 65 (1st Cir. 2004) (courts are "entitled to take judicial notice of the records of relevant court proceedings," including state court docket sheet); *Berkshire-Cranwell L'td P'ship v. Tokio Marine & Nichido Fire Ins. Co.*, 874 F. Supp. 2d 41, 50 & n. 3 (D. Mass. 2012) (taking judicial notice of events that occurred in state court).

The Court may consider any and all exhibits to the *Newman I* complaint because they were integral to that complaint, which the current Complaint explicitly incorporates by reference. Doc. 9 ¶ 11. "A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes." Fed. R. Civ. P. 10(c); *accord* Mass. R. Civ. P. 10(c), *Midland States Life Ins. Co. c. Cardillo*, 59 Mass. App. Ct. 531, 536 (2003) (Massachusetts courts "take the many attachments and exhibits in the record to be part of the pleadings"). The complaint,

exhibits, and notice of dismissal in *Newman I* are not subject to reasonable dispute as to their authenticity, which is readily confirmed by recourse to the state docket. They may be further confirmed via their recent appearance in exhibits (ECF Nos. 107-1 through 107-3) filed in *Monsarrat v. Zaiger*, Case No. 1:17-cv-10356 (D. Mass. filed Feb. 13, 2018) ("*Zaiger*"), an earlier action to which Monsarrat often makes reference, and erroneously termed related to this action. *See* Doc. 1-1 ¶ VIII; Doc. 9 ¶¶ 14, 29-30; Doc. 13; Doc. 14.

II.   **Exhibits G and H, Monsarrat's original "Violation of LiveJournal abuse policies" Davis Square LiveJournal post and the copy posted on Davis Square Dreamwidth, are incorporated in the Complaint by reference or subject to judicial notice.**

Exhibit G is a copy of Monsarrat's February 6, 2010 "Violation of LiveJournal abuse policies" post ("Violation") in the Davis Square LiveJournal community thread "Today's Somerville Police Blog." *See also* Exhibit C p. 95. Exhibit H is a copy of the same post as archived within the same thread via the Davis Square community's new host server Dreamwidth.

| Exhibit | Content |
|---|---|
| G | Jonathan Monsarrat, "Violation of LiveJournal abuse policies," post in Davis Square LiveJournal "Today's Somerville Police Blog" thread, February 6, 2010, available at davis-square.livejournal.com/2101375.html?thread=24842623#t24842623 |
| H | Jonathan Monsarrat, "Violation of LiveJournal abuse policies," post in Davis Square Dreamwidth "Today's Somerville Police Blog" thread, February 6, 2010, available at davis-square.dreamwidth.org/1972637.html?thread=23924125#cmt23924125 |

The sole basis for the copyright infringement claim is the archival Dreamwidth reproduction of the Violation post. Doc. 9 ¶¶ 45-46. The court may consider "documents central to plaintiffs' claim." *Freeman v. Town of Hudson*, 714 F.3d 29, 36 (1st Cir. 2013). "When, as now, a complaint's factual allegations are expressly linked to—and admittedly dependent upon—a document (the authenticity of which is not challenged), that document effectively merges into the pleadings and the trial court can review it in deciding a motion to dismiss under Rule 12(b)(6)." *Beddall*, 137 F.3d at 17. The Court "may properly consider the relevant entirety of a document integral to or explicitly relied on in the complaint, even though not attached to the

complaint, without converting the motion [to dismiss] into one for summary judgment." *Shaw v. Digital Equip. Corp.*, 82 F.3d 1194, 1220 (1st Cir. 1996).

"[W]hen all relevant facts are presented, the court may properly dismiss a case before discovery[.]"*Brownmark Films, LLC v. Comedy Partners*, 682 F.3d 687, 690 (7th Cir. 2012). When a copyright infringement claim is based on a single use, "the only pieces of evidence needed to decide the question of fair use are the original version" of the copyrighted work and the defendant's use. *Id.* Under Rule 12 it is proper to consider both the plaintiff's copyrighted work, which the Complaint identifies by its copyright registration number (Doc. 9 ¶ 45), and the allegedly infringing copy. *See McGee v. André Benjamin 3000*, No. 08-cv-11818-DPW, 2012 U.S. Dist. LEXIS 37210, *13-14 (D. Mass. Mar. 20, 2012); *Sarvis v. Polyvore, Inc.*, No. 12-cv-122233-NMG, 2013 U.S. Dist. LEXIS 112539, *8-9 & 11 n. 3 (D. Mass. Aug. 9, 2013). The operative Complaint incorporates both by reference. It specifically relies both "the amended complaint" from *Newman I*, which included the original Violation post as an integral exhibit, and the archival copy "reproduced and published on Dreamwidth[.]" Doc. 9 ¶¶ 11, 46. Further, both works are subject to judicial notice. *See City of Inglewood v. Teixeira*, No. CV-15-01815-MWF, 2015 U.S. Dist. LEXIS 114539, *3-6 & 19 (C.D. Cal. Aug. 20, 2015) (granting request for judicial notice of allegedly infringed and infringing works to address fair use at Rule 12 stage).

### III. Exhibits I through K, Davis Square LiveJournal threads archived on Dreamwidth, are incorporated in the Complaint by reference or subject to judicial notice.

Exhibits I through K are copies of Davis Square LiveJournal discussion threads from 2009, 2010, and 2013, respectively, as reproduced and migrated to Dreamwidth. Monsarrat alleges that Newman defamed him by compiling, and republishing via Dreamwidth, statements originally written and posted by third parties in the following threads; the complaint cites fragmentary excerpts of the "republished posts" without context. Doc. 9 ¶¶ 20-21.

| Exhibit | Content |
|---|---|
| I | Davis Square LiveJournal "Wheel Questions" thread, July 24-29, 2009, available via Dreamwidth at davis-square.dreamwidth.org/1752872.html |
| J | Davis Square LiveJournal "Today's Somerville Police Blog" thread, February 4-7, 2010, available via Dreamwidth at /davis-square.dreamwidth.org/1972637.html |
| K | Davis Square LiveJournal "Help! I am being sued for my participation in davis_square" thread, April 30-May 10, 2013, available via Dreamwidth at davis-square.dreamwidth.org/2992231.html |

Because the excerpted comments are central to his defamation claim, the court may consider the posts in their entirety, in the context of the threads where they are archived. The Court is "entitled to take notice of the full contents of the published [comments] referenced in the complaint, from which the truncated quotations were drawn." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 568 n. 13 (2007). "[W]here the plaintiff has referenced part of a document in the complaint, it is proper for the court to view the rest of that document so as to be able to understand it in context." *Airframe Sys. v. Raytheon Co.*, 520 F. Supp. 2d 258, 263 (D. Mass. 2007) (*citing Shaw*, 82 F.3d at 1220), *aff'd*, 601 F.3d 9 (1st Cir. 2010). "Context matters in assessing such claims: 'The court [must] examine the statement in its totality in the context in which it was uttered or published. The court must consider all the words used, not merely a particular phrase or sentence.'" *Amrak Prods. v. Morton*, 410 F.3d 69, 72-73 (1st Cir. 2005) (*quoting Foley v. Lowell Sun Publ'g Co.*, 404 Mass. 9, 11, 533 N.E.2d 196, 197 (Mass. 1989) (brackets in original)).

Nonparties originally posted the allegedly defamatory comments identified in the Complaint at Doc. 9 ¶ 21. All first appeared on DSLJ, except one that appeared in a Wicked Local Somerville blog post. *Id.* ¶ 21(i); *see* Exhibit B. And all were among the comments at issue in *Newman I* except one, which was first posted in a 2013 DSLJ thread about that action during its pendency, at davis-square.livejournal.com/3171249.html?thread=34513585#t34513585. Doc. 9 ¶ 21(vii); *see* Exhibit K p. 10. Though Monsarrat is precluded from raising claims over the

original publications, he alleges that Newman became liable for this third-party speech upon making the DSLJ comments available through a new host server, Dreamwidth. Doc. 9 ¶¶ 22-25.

Accordingly, Newman requests that the Court take notice of, and review, the archived posts as they appear online, with the LiveJournal usernames of each original Davis Square poster identified. "A court may take judicial notice of the contents of a website for the fact that such information was published and in the public realm." *Starbrands Capital, LLC v. Original MW Inc.*, No. 14-cv-12270-ADB, 2015 U.S. Dist. LEXIS 121453, *11-12 (D. Mass. Aug. 14, 2015). *See also Martins v. 3PD, Inc.*, No. 11-cv-11313-DPW, 2013 U.S. Dist. LEXIS 45753, *47-48 & n. 8 (D. Mass. Mar. 28, 2013) (taking judicial notice of historical versions of defendant's website available on the Internet Archive); *Walsh v. Teltech Sys.*, No. 13-cv-13064-RWZ, 2015 U.S. Dist. LEXIS 191349, *3-6, nn. 2 & 6 (D. Mass. July 30, 2015) (same).

**IV.** **Exhibit L, Newman's December 2017 Dreamwidth post, and Exhibits M through O, the Dreamwidth pages and Universal Hub article hyperlinked therein, are incorporated in the Complaint by reference or subject to judicial notice.**

Exhibit L is a copy of a December 26, 2017 Dreamwidth post by Newman in the Davis Square community forum, discussing *Newman I* and the dismissal of Monsarrat's copyright claim in *Monsarrat v. Zaiger*, 286 F. Supp. 3d 253 (D. Mass. 2017) ("*Zaiger*"). Doc. 9 ¶ 32. Exhibits M through O are copies of online materials that Newman referenced by hyperlinks provided in that post, respectively: a *Universal Hub* article discussing *Zaiger*, a Davis Square LiveJournal thread as archived on Dreamwidth discussing *Newman I*, and a Dreamwidth page compiling threads in the Davis Square forum with the "jonmon" tag attached.

| Exhibit | Content |
|---|---|
| L | Davis Square Dreamwidth "JonMon loses another lawsuit, this time against Encyclopedia Dramatica" thread, December 26-27, 2017, davis-square.dreamwidth.org/3646755.html |
| M | Adam Gaffin, *Judge rules man waited too long to sue Web site that transformed a photo of him as a beaver into a photo of him as a pedobear*, Universal Hub (Dec. 26, |

| | |
|---|---|
| | 2017), universalhub.com/2017/judge-rules-man-waited-too-long-sue-web-site |
| N | Davis Square LiveJournal "VICTORY! The Jonmon lawsuit is over! Dismissed voluntarily with prejudice by the plaintiff" thread, June 7-12, 2013, available via Dreamwidth at davis-square.dreamwidth.org/3027022.html |
| O | Compilation of Davis Square Dreamwidth threads tagged with "jonmon" tag, July 29, 2008-December 26, 2017, davis-square.dreamwidth.org/tag/jonmon |

The 2017 post (Exhibit L) is the basis of "Monsarrat's allegations of intentional harm and of improper and malicious motive" under his defamation claim. Doc. 13 pp. 3-4. While Monsarrat does not claim that anything in the post was defamatory, he alleges that Newman published it to "encourage" and "invit[e] others" to read allegedly defamatory statements available (i) on Dreamwidth via the "jonmon" tag or (ii) as exhibits filed in *Zaiger* via PACER or legal news websites. Doc. 9 ¶¶ 33-34. The Complaint incorporates the post by reference, reciting it nearly verbatim. *Id.* ¶ 32. The Complaint also incorporates by reference the Dreamwidth page (Exhibit O) that compiles the forum threads that users have tagged with Monsarrat's nickname "jonmon." *Id.* ¶¶ 33(i)-(ii) (distinguishing the "Dreamwidth 'jonmon' page" from "the original EncyclopediaDramatica jonmon page"). The court may therefore consider them in their entirety and examine them in their full context. *Airframe Sys.*, 520 F. Supp. 2d at 263; *Amrak Prods.*, 410 F.3d at 72-73. *See also Nicosia v. De Rooy*, 72 F. Supp. 2d 1093, 1102-03 (N.D. Cal. 1999) (considering articles, hyperlinked within allegedly defamatory post on news group website, as part of the context of the allegedly defamatory statement)

Examining the 2017 post in its full context requires review of the article and threads referenced by hyperlinks in the post because the full context of an online post includes any hyperlinked material. *See McKee v. Cosby*, 874 F.3d 54, 64 (1st Cir. 2017) ("a hyperlink to the source article [allows] readers to put … statements into proper context"); *Ayyadurai v. Floor64, Inc.*, 270 F.3d 343, 361 (D. Mass. 2017) ("by providing hyperlinks to the relevant information, the articles enable readers to review the underlying information for themselves and reach their

own conclusions"); *Adelson v. Harris*, 973 F. Supp. 2d 467, 483-86 (S.D.N.Y. 2013), *aff'd*, 876 F.3d 413 (2d Cir. 2017). Each hyperlink in the 2017 post had the conspicuous blue underlining typical of hyperlinks. Exhibit L; *see Cullinane v. Uber Techs., Inc.*, 893 F.3d 53, 63 (1st Cir. 2018); *Adelson*, 973 F. Supp. 2d at 473.

And the hyperlinks all provided context germane to Newman's discussion of *Newman I* in that post. His statement that Monsarrat had "just lost another lawsuit" included a hyperlink to the *Universal Hub* article (Exhibit M), which in turn discussed both *Zaiger* and *Newman I*. His statement that Monsarrat had "sued me, former Somerville Journal editor Deb Filcman, and 100 local 'John Does'" included a hyperlink to the LiveJournal thread Newman initiated when served process in *Newman I* on April 30, 2013, as archived on Dreamwidth (Exhibit K). His statement that Monsarrat had been persuaded to "dismiss his suit against us" included a hyperlink to the thread Newman initiated when Monsarrat dismissed *Newman I* on June 7, 2013, also as archived on Dreamwidth (Exhibit N). Newman's last statement in the 2017 post, "for more background, see the jonmon tag," included a hyperlink to the Dreamwidth page (Exhibit O) compiling forum threads that the "jonmon" tag identified as concerning Monsarrat, most of which were posted about *Newman I* during its pendency or soon after. Accordingly, Exhibits L through O may be deemed incorporated by reference in the Complaint. *See Lydon v. Local 103, Int'l Bhd. of Elec. Workers*, 770 F.3d 48, 53 (1st Cir. 2014) (in ruling on a motion to dismiss "a judge can mull over 'documents incorporated by reference in [the complaint].'") (*quoting Giragosian v. Ryan*, 547 F.3d 59, 65 (1st Cir. 2008)). To the extent they are not, they are also subject to judicial notice.

**V.  Exhibits P and Q, Wikipedia pages about LiveJournal and Dreamwidth, are incorporated in the Complaint by reference or subject to judicial notice.**

Exhibits P and Q are the Wikipedia entry pages about LiveJournal and Dreamwidth specifically referenced and quoted in the Complaint.

| Exhibit | Content |
|---|---|
| P | Wikipedia, *LiveJournal*, en.wikipedia.org/wiki/LiveJournal (retrieved Sept. 9, 2020) |
| Q | Wikipedia, *Dreamwidth*, en.wikipedia.org/wiki/Dreamwidth (retrieved Sept. 9, 2020) |

By providing hyperlinks to both pages, the Complaint quite literally incorporates both by reference. Doc. 9 ¶¶ 7, 18. The Court may therefore consider them in their entirety. *Airframe Sys.*, 520 F. Supp. 2d at 263; *Amrak Prods.*, 410 F.3d at 72-73. "Courts have taken judicial notice of Wikipedia content, based their reasoning on Wikipedia entries, and decided dispositive motions on the basis of Wikipedia content." Lee F. Peoples, *The Citation of Wikipedia in Judicial Opinions*, 12 Yale J. L. & Tech. 1, 3 (2009-2010). "[I]f a party cites a Wikipedia entry the court should investigate the entry and discuss it in the opinion if appropriate." *Id.* at 31. Thus, the Court may rely on the content of these Wikipedia entries cited in the Complaint in deciding the motion to dismiss. *See Aldabe v. Cornell Univ.*, 296 F. Supp. 3d 367, 372 (D. Mass. 2017) (considering Wikipedia content raised in complaint); *Dulberg v. Uber Techs., Inc.*, No. C. 17-00850 WHA, 2017 U.S. Dist. LEXIS 120008, *8 (N.D. Cal. July 31, 2017) (considering contents of website quoted and referenced by hyperlink in complaint as incorporated by reference therein).

The authenticity of these entries is not subject to reasonable dispute. While Wikipedia entries are subject to change by user edits, the full content of the pages relied on in the Complaint is verifiably the same content captured in Exhibits P and Q. "Every article on Wikipedia has a 'View history' tab with links to all previous edits, the dates of each edit, and the user name or IP address of each editor. The revision history also allows the readers to view an article in each of its previous iterations." *Fire Ins. Exch. v. Oltmanns*, 2012 UT App 230, ¶ 18 n. 3, 285 P.3d 802 (Utah Ct. App. Aug. 16, 2012) (Voros Jr., J., concurring). As that history shows, neither page was revised between September 9, 2020, when Exhibits P and Q were retrieved from Wikipedia, and the filing of the Complaint on September 29, 2020, or at any other time that

month. *See* Wikipedia, *LiveJournal: Revision history*, en.wikipedia.org/w/index.php?title=LiveJournal&action=history; Wikipedia, *Dreamwidth: Revision history*, en.wikipedia.org/w/index.php?title=Dreamwidth&action=history. Reviewing the precise textual content that Monsarrat cited in the Complaint assuages any potential concerns over *post hoc* editing, reliability, or authenticity.

Newman requests that the Court take judicial notice of certain facts set forth in the Wikipedia entries Monsarrat cited in the Complaint that are readily confirmed and are neither in nor subject to reasonable dispute. Fed. R. Evid. 201(b). These facts are germane to the Court's fair use analysis of the transformative and noncommercial purpose of the migration of Davis Square LiveJournal to Dreamwidth, including the Violation post.

As Monsarrat alleges, "on April 4, 2017 LiveJournal changed its terms of service prohibiting users from posts or actions 'contradictory to the laws of the Russian Federation[.]'" Doc. 9 ¶ 7 (citing and quoting en.wikipedia.org/wiki/LiveJournal). The quoted Wikipedia entry about LiveJournal further explains,

> On April 4, 2017, LiveJournal significantly modified its terms of use, making the service subject to Russian law. The new terms prohibit users from posting "advertising and/or political solicitation materials" or performing any actions "contradictory to the laws of the Russian Federation" …
>
> … The new terms prompted wide concern from users who believed that their content would now be targeted under Russian censorship policies, including the country's 'gay propaganda' law. This prompted an "exodus" to alternate platforms of groups who either support LGBT rights or wished to continue discussing those topics.

Exhibit P p. 14. These facts are not subject to material dispute and are wholly consistent with the allegations in the Complaint. *See* Doc. 9 ¶ 19 (characterizing Dreamwidth's "respect for diverse communities such as the LBGT community" and "openness to content which after April 4, 2017 is no longer welcome on LiveJournal"). Accordingly, Newman requests judicial notice

11

of the fact that, weeks before he is alleged to have copied LiveJournal posts and made them available on Dreamwidth ("[o]n or shortly after April 30, 2017"), LiveJournal modified its terms of service, making the service subject to Russian law and prompting concerns over political censorship, as explained in the Wikipedia entry for LiveJournal quoted in the Complaint.

Monsarrat also alleges:

> Different from LiveJournal, Dreamwidth is an interactive computer service, established, according to Wikipedia, more than ten years ago by former LiveJournal staff "born out of a desire for a new community [apart from LiveJournal] based on open access, transparency, freedom and respect." According to Wikipedia, like LiveJournal, Dreamwidth provides "shared or group journals called 'communities.'"

Doc. 9 ¶ 18 (citing and quoting en.wikipedia.org/wiki/Dreamwidth). The quoted Wikipedia entry on Dreamwidth specifically identifies advertising as one of the "areas in which Dreamwidth differs significantly from LiveJournal," and explains that "Dreamwidth remains free of advertisements." Exhibit Q pp. 1-2. *See id.* p. 3 ("Unlike many other social networking sites using the LiveJournal codebase … Dreamwidth is a code fork, removing unwanted features (such as advertising) … Founders of the site rejected the advertising model as intrusive."). These facts are also not subject to material dispute and consistent with the allegations in the Complaint. Newman requests judicial notice of the fact that there is no advertising on Dreamwidth, as explained in the Wikipedia entry for Dreamwidth, and as seen in Exhibits H, I, J, K, L, N, and O. In particular, Newman requests judicial notice of the fact that no advertisements appear on the Dreamwidth page where Monsarrat's Violation post is archived. *See* Exhibits H and J.

**VI.     Exhibits R through U, exhibits and orders filed in *Zaiger*, are incorporated in the Complaint by reference or subject to judicial notice.**

Exhibits R through U are filings in the *Zaiger* action discussed at length in the Complaint.

| Exhibit | Content |
|---|---|
| R | *Zaiger* Doc. 79: Memorandum and Order (D. Mass. Dec. 21, 2017) |
| S | *Zaiger* Doc. 107-7: Somerville Police Department Incident Report #10003036 (Jan. |

| | |
|---|---|
| | 29, 2010) |
| T | *Zaiger* Doc. 107-10: Auditi Guha, *Somerville Police bust Question Wheel creator's underage drinking party*, Wicked Local Somerville (Feb. 4, 2010) |
| U | *Zaiger* Doc. 107-6: Dan Booth letter to Mark Ishman and David Click re: *Monsarrat v. Filcman, Newman and Does 1-100*, C.A. No. MICV2013-00399-C (May 14, 2013) |

The Complaint incorporates by reference the "publicly accessible docket entries" from the *Zaiger* action, originally styled *Jonathan Monsarrat v. GOTPER6067-00001 et al.* Doc. 9 ¶¶ 14-15, 30-31. Those docket entries, including the order dismissing Monsarrat's copyright claim (Exhibit R) and exhibits filed with Mr. Zaiger's opposition to Monsarrat's post-dismissal motion to amend (Exhibits S through U), are also subject to judicial notice and the Court may consider them in their entirety at the motion to dismiss stage. *See Colonial Mortgage Bankers*, 324 F.3d at 15-16 (judicial notice of prior proceedings in federal court); *Tellabs*, 551 U.S. at 322.

Monsarrat cannot plausibly dispute their authenticity. He has already sought judicial notice in this action of other filings from *Zaiger*. Doc. 13 p. 1 n. 1. *See also Zaiger*, 2018 U.S. Dist. LEXIS 152002, *17 n. 10 (D. Mass. Aug. 13, 2018) (noting Monsarrat had not disputed the authenticity of a *Boston Globe* article about his arrest, also filed in support of Mr. Zaiger's opposition). Exhibit R is an order of this Court retrieved via PACER. Exhibit S, the Somerville Police Department report, was publicly recorded to document his 2010 arrest, and his *Newman I* complaint admitted that he had been "arrested for the offense as described in the criminal docket." Exhibit A ¶ 22. Again, he incorporates that complaint by reference in the Complaint in this action. Doc. 9 ¶ 11. Exhibit T, the *Wicked Local Somerville* article that broke the story of his arrest, was quoted at length as an exhibit to the 2013 complaint and thereby also incorporated by reference thereto. *See* Exhibit C p. 1. And Exhibit U, the letter Monsarrat's then-counsel received from Newman's undersigned counsel during *Newman I*, precipitated dismissal three weeks later, before Newman was required to file a response. *See* Exhibits E, F & N.

Newman does not seek judicial notice of the truth of any statements in the *Zaiger* filings. *See Greenspan v. Random House, Inc.*, No. 12-1594, 2012 U.S. App. LEXIS 22285 (1st Cir. Oct. 16, 2012); *Amphastar Pharms., Inc. v. Momenta Pharms., Inc.*, 297 F. Supp. 3d 222, 229 (D. Mass. 2017); *Cosenza v. City of Worcester*, 355 F. Supp. 3d 81, 97 (D. Mass. 2019) ("'Specifically, on a motion to dismiss, we may take judicial notice of another court's opinion – *not for the truth of the facts recited therein,* but for the existence of the opinion, which is not subject to reasonable dispute over its authenticity.'") (*quoting S. Cross Overseas Agencies, Inc. v. Wah Kwong Shipping Ground Ltd.*, 181 F.3d 410, 426 (3d Cir. 1999)). Rather, Newman requests judicial notice of the fact of their existence and their contents, which reflect that Monsarrat's arrest was widely reported and that Newman's statements about the *Zaiger* dismissal were well-founded; and, in the case of the letter produced as Exhibit U, that Newman's letter was communicated to Monsarrat via counsel. None of that is subject to reasonable dispute. *See generally* Julie McMahon, *Them's fightin' words*, 41 Mass. Law. Wkly. 1932 (July 15, 2013) (discussing and quoting Exhibit U); Mike Masnick, *Bogus Lawsuit Plus Threats To Those Who Write About It Leads To Epic Response*, TechDirt (May 17, 2013), techdirt.com/articles/20130517/02413623115 (quoting and including Exhibit U); Mike Masnick, *Jonathan Monsarrat Drops Ridiculous Lawsuit Against Online Commenters*, TechDirt (June 10, 2013), techdirt.com/articles/20130608/08444123372 (discussing Exhibit U).

By that letter, Newman explained that he was one of the Davis Square LiveJournal community's unpaid volunteer moderators ("maintainers," in LiveJournal-speak). Exhibit U p. 2. The letter explained that the Davis Square posts were not "done as part of a business transaction." *Id.* p. 11. The letter opposed *Newman I* on free speech grounds and addressed Monsarrat's attempts at private censorship: "[Monsarrat] may not harass people in the Somerville community

by seeking to intimidate them into removing their legitimate free speech comments. … One of Mr. Monsarrat's intimidation tools, as he seeks to strong-arm silence about his past, is to demand silence about his demands." *Id.* p. 17. Newman requests that the Court take notice of the positions that he took in *Newman I* as material to the fair use analysis, as evidence of his noncommercial, transformative, and pro-speech purposes under the first factor.

Dated: November 30, 2020

Respectfully submitted,

/s/  Dan Booth
Daniel G. Booth (BBO# 672090)
DAN BOOTH LAW LLC
121 Thoreau Street #121
Concord, MA 01742
(646) 573-6596
dan@danboothlaw.com

*Counsel for Defendant Ron Newman*

**CERTIFICATE OF SERVICE**

I certify that the foregoing document, filed on this November 30, 2020 via the Court's ECF system, will thereby be served upon Plaintiff.

/s/  Dan Booth

**CERTIFICATE OF COMPLIANCE WITH RULE 7.1(a)(2)**

I certify that on November 24, 2020, I sought to confer with Plaintiff's counsel Richard Goren in a good-faith attempt to resolve or narrow the issues in dispute in this request but have not reached resolution before filing.

/s/  Dan Booth