UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| JONATHAN MONSARRAT, | ) | |
| *Plaintiff*, | ) ) ) | |
| v. | ) ) | CIVIL ACTION NO. 20-cv-10810-RGS |
| RON NEWMAN | ) ) ) | |
| *Defendant.* | ) ) ) | **OPPOSITION TO MOTION TO DISMISS** |

### I. INTRODUCTION AND SUMMARY

There is no legitimate dispute that each of the complaint's two counts, defamation and copyright infringement, are sufficiently and plausibly pled. Defendant seeks to skip right to trial and the determination of factual issues necessary to support his purported, but as yet unpled, affirmative defenses.

### II. BACKGROUND

In opposing Defendant's Rule 12(b)(6) motion the Plaintiff sets forth or summarizes the essential allegations of his Amended Complaint, Doc 9, ("AC") claims for defamation and copyright infringement necessary for the Court's *Twombly/Iqbal* plausibility assessment.

*A. Defamation.*

Several years ago on an interactive website,[1] LiveJournal.com, a number of mostly pseudonymous persons posted content falsely accusing the Plaintiff of despicable crimes

---

[1] Section 230 uses the term "Interactive computer service." 47 U.S.C. §230(f)(2). "The term "interactive computer service" means any information service, system, or access software provider

including that he was a pedophile specifically a "sexual predator," a "Rapist/Con-Man," and a "child predator." AC ¶¶ 7-9. The Defendant was also a content provider[2] on this interactive website and "offered editorial like comments concerning this online smear attack on Plaintiff." *Id.*

To this day those false accusations of despicable crimes published by the anonymous content providers remain on the LiveJournal website. *Id.*¶¶ 13, 17. While those defamatory posts "exposed Plaintiff to public hatred, contempt, ridicule and disgrace," *id.* ¶10, in 2013 Plaintiff unsuccessfully sued the Defendant and others seeking damages essentially for defamation. *Id.* ¶¶ 11,12.

On or shortly after April 30, 2017, "Defendant made copies of the no-longer actionable individual false and defamatory statements originally posted by various anonymous persons on the LiveJournal website." *Id.* ¶16.

"On or shortly after April 30, 2017, as a user of the Dreamwidth website, Defendant published on Dreamwidth a compilation of the copies he had made of the LiveJournal defamatory posts whose words had been both created and then originally published on LiveJournal by the anonymous users." *Id.* ¶20.

The Dreamwidth website "is materially different from the LiveJournal website," including for among other material reasons that it "is aimed at a fundamentally different audience." *Id.* ¶¶7,18,19.

---

that provides or enables computer access by multiple users to a computer server, including specifically a service or system that provides access to the Internet and such systems operated or services offered by libraries or educational institutions."

[2] See statutory definition, note 5 *infra*.

By his posting on the Dreamwidth website "Defendant individually communicated to both the Dreamwidth audience, and others worldwide via search engine users interested in Plaintiff or considering a potential investment in Plaintiff's augmented reality interactive video game start up business to be marketed to young adults of both sexes, that as of, or shortly after, April 30, 2017:

> (i) "[Plaintiff] is a child "molester;"
> (ii) "[Plaintiff] is a sexual predator in our community;"
> (iii) "[Plaintiff] has a social rap sheet as long as my arm of sexual harassment and preying
> on young women who don't know better;"
> (iv) [Plaintiff] "habitually rape{s} strangers;"
> (v) [Plaintiff is a] "creepy {sic}staulker;"
> (vi) "keeping teenagers away from creeps is part of every community's duty;"
> (vii) [Plaintiff is a] "statutory raping douchebag;"
> (viii) [Plaintiff] "lure{s} teenage girls;"
> (ix) [Plaintiff] "repeatedly behave{s} in a predatory fashion;" (*Id*. ¶21).
>
> The Plaintiff contends:
>
> "Defendant so republished on Dreamwidth the no-longer actionable individual LiveJournal anonymous defamatory posts intending to maliciously defame and discredit Plaintiff and with the purpose and effect of having others repeat such false and defamatory statements and thereby further damage Plaintiff's reputation." (*Id.* ¶22);
>
> "By his actions Defendant took ownership of the collection of defamatory speech and his republication on an entirely different website triggered accrual of an entirely new cause of action against him for defamation under Massachusetts law. (*Id.* ¶23);
>
> "As a user of the Dreamwidth website by his republication thereon of speech originally created many years before by numerous anonymous speakers Defendant:
>
> > (i)   was the proximate cause of the alleged wrongdoing; and/or
> >
> > (ii)  at a minimum materially contributed to its unlawfulness." (*Id.* ¶24);

> "Defendant is the legally responsible information content provider of this actionable libel published on Dreamwidth and is not entitled to immunity under the Communications Decency Act, 47 U.S.C. §230." (*Id.* ¶25); and, that he has suffered and continues to suffer harm from Defendant's malicious defamation and his continuing efforts on social media to discredit Plaintiff. (*Id.* ¶¶26-43).

B. *Copyright Infringement.*

The Amended Complaint alleges that: (i) the Plaintiff is both the author of a certain copyrighted work and the registered owner of that work holding a US Copyright Office Registration No. TXu001823219 dated August 16, 2012 for that work. (*Id.* ¶45); (ii) that "[o]n or shortly after April 30, 2017, without permission, consent or right to do so, Defendant reproduced and published on Dreamwidth Plaintiff's said copyright." (*Id.* ¶46) and did so "as an integral part of Defendant's defamatory statements falsely accusing the Plaintiff of despicable crimes." (*Id.* ¶1).

C. *Defendant's motion to dismiss.*

1. *Defamation.* Defendant does not dispute the *per se* libelous nature of the statements he posted, rather, Newman contends that he "is absolutely immune under 47 U.S.C §230" because (i) "[h]e neither wrote nor solicited" the original posts and (ii) without alteration he merely "migrat[ed] them to a new server." Doc. 16 at 2. Newman argues that he did not "give … [the 2017 false accusations of crimes] any defamatory character" and "Section 230 prohibits treating him as their author for purpose of th[is] claim." *Id.* Newman necessarily contends that his affirmative avoidance defense—on which he has the burden of proof—is evident on the face of the Plaintiff's complaint.

2. *Copyright Infringement.* Defendant likewise does not deny that in 2017 without consent he copied Plaintiff's copyrighted work and reproduced the same on the Dreamwidth

website. Newman contends his burden of proof on the affirmative defense of fair use is evident on the face of Plaintiff's complaint. *Id.*

### III. LEGAL STANDARDS.

A. Rule 12(b)(6).

Under the current *Twombly/Iqbal* standard "an adequate complaint must provide fair notice to the defendant[] and state a facially plausible legal claim." *Ocasio-Hernandez v Fortuno-Burset*, 640 F. 3d 1, 12 (1st Cir. 2011) (quoting *Twombly*, 550 U.S. at 555). If taking plaintiff's factual allegations as true, "allow[s] the Court to draw the reasonable inference that the defendant is liable for the misconduct alleged," the claim is facially plausible. *Id.* at 11. The issue before the Court is not whether the plaintiff will ultimately prevail. "It is not for the court to decide, at the pleading stage, which inferences are more plausible than other competing inferences, since those questions are properly left to the factfinder." *Evergreen Partnering Grp., Inc. v. Pactiv Corp.*, 720 F.3d 33, 45 (1st Cir. 2013).

Newman does not dispute that Plaintiff's complaint plausibly alleges claims for libel and copyright infringement. Newman argues that the Court must dismiss both of Plaintiff's claims based on two separate—as yet unpled—affirmative defenses neither of which fall within the standard Rule 8(c)(1) boilerplate legal defenses. First, as to the libel claim Newman does not dispute that as a user of Dreamwidth he alone republished a number of *per se* defamatory statements that had been posted several years earlier by a number of anonymous posters. Instead, Newman contends that despite the acceptance of Plaintiff's factual allegations as true he is absolutely immune under Section 230 of the Communications Decency Act, 47 U.S.C §230. With respect to the copyright infringement count, Newman contends the infringement claim must be dismissed upon application of the fair use doctrine to the face of Plaintiff's complaint.

5

The fair use affirmative defense "usually present[s] mixed questions of fact and law," as to which Newman bears the burden of proof necessarily includes an examination of "the propriety of …[his] conduct … [and his] good faith and fair dealing" under an equitable weighing of the 17 U.S.C. § 107 factors. *Harper & Row, Publishers, Inc. v. Nation Enterprises*, 471 U.S. 539, 560, 562-63 (1985).

As expounded further in Section IV *infra*, it is fundamentally inappropriate for Newman to move for judgment on these two non-boilerplate affirmative defenses from the face of Plaintiff's complaint. See *Kaufmann v. Prudential Ins. Co. of Am.* No. 09-10239-RGS (Doc 13) (Aug. 6, 2009). Appendix A.

**IV.** **ARGUMENT**

*A. The material at issue in this case is per se defamatory.*

Under Massachusetts law [a] statement is "defamatory" if it can be read as discrediting the plaintiff "in the minds of any considerable and respectable class of the community."… A defamatory statement holds the plaintiff up to "scorn, hatred, ridicule, or contempt." *S. Middlesex Opportunity Council v. Town of Framingham*, 752 F. Supp. 2d 85, 114 (D. Mass. 2010) (citations omitted). "[T]he imputation of a crime is defamatory *per se*, requiring no proof of special damages." *Phelan v. May Dep't. Stores Co.*, 443 Mass. 52, 56 (2004). See also *Damon v. Moore*, 520 F.3d 98, 103 n.2 (1st Cir. 2008)(statements that: constitute "libel," "charge the plaintiff with a crime" or "may prejudice the plaintiff's profession or business" "are actionable without proof of economic loss").

The cause of action against the speaker accrues, and the three-year statute of limitations provided by Mass. Gen. Laws. C. 260§2A begins to run, on the date the defamatory statement is first published by the speaker. *Flynn v. Associated Press*, 401 Mass. 776, 780 (1988); *Wolsfelt v.*

6

*Gloucester Times*, 98 Mass. App. Ct. 321, 322 (2020) (single publication rule applied to "defamatory statement posted on a newspaper's website"). However, "[e]ach time that libelous matter is communicated by a new person, a new publication has occurred, which is a separate basis of tort liability." Restatement (Second) of Torts § 578 (1977) Liability of Republisher, comment b. A "republisher of a defamatory statement is subject to liability as if he had originally published it." *Appleby* v. *Daily Hampshire Gazette,* 395 Mass. 32, 36 (1985), quoting Restatement (Second) of Torts § 578 (1977).

> Thus, republishing material, editing and reissuing material, or placing it in a new form that includes the defamatory material, can create a new cause of action, which begins to run on the date of republication. See Restatement (Second) of Torts § 577A comment d, at 210 ("the single publication rule . . . does not include separate aggregate publications on different occasions").

*Wolsfelt,* 98 Mass. App. Ct. at 322 (*dicta*). Here the original anonymous defamatory statements remain on the Live Journal website. AC ¶¶ 13, 17. Any alleged breach of duty by the persons responsible for what made their individual statements unlawful is "no longer actionable." *Id.* ¶¶11, 12, 22. There is no allegation that in 2017 any of the original anonymous posters on the LiveJournal website have said or published anything new to injure the Plaintiff.[3]

Absent a privilege or other avoidance defense Newman must be adjudged liable for republishing the libel even supposing he had added "a truthful preface that" he is only quoting what the prior anonymous LiveJournal posters had stated 8 or 9 years before. *Jones v. Taibbi*, 400 Mass. 786, 792 (Mass. 1987)(citations omitted).

---

[3] Those 8 or 9 year old statements cannot "be resurrected into a new cause of action without … [those prior anonymous] person[s] … saying or doing anything to harm the plaintiff." *Vondra v. Crown Pub. Co.,* No. 012199F, 2002 WL 31379948, at *4 (Mass. Super. Sept. 12, 2002), aff'd sub nom. *Vondra v. Crown Publ'g Co.,* 61 Mass. App. Ct. 1116, 810 N.E.2d 1291 (2004).

1. <u>Newman is not immune under the Communications Decency Act, ("CDA") 47 U.S.C. §230.</u>

In assessing such an avoidance defense the Court should distinguish between an internet service provider[4] ("ISP"), that passively provides "access by multiple users" to an inter-active internet platform and a user of that platform who is also an "information content provider."[5] Enactment of Section 230 was "prompted by a state court case holding … [a passive website] responsible for a libelous message posted" by a third party. *Fair Hous. Council of San Fernando Valley v. Roommates.Com, LLC*, 521 F.3d 1157, 1163 (9th Cir. 2008).[6] Websites are the "most common interactive computer services" providers. *Roommates*, 521 F.3d at 1162 n. 6. It is only Newman's conduct as a user of the Dreamwidth website republishing statements originally posted on another website that is the subject of Plaintiff's complaint.

Section 230

> shields conduct if the defendant (1) 'is a provider or user of an interactive computer service, (2) the claim is based on information provided by another information content provider and (3) the claim

---

[4] See note 1 *supra*.

[5] 47 U.S.C. §230 (f)(3) "The term "information content provider" means any person or entity that is responsible, in whole or in part, for the creation or development of information provided through the Internet or any other interactive computer service. We note Newman's immaterial contentions that as a "moderator" of a discussion group on the LiveJournal website and/or a user of the Dreamwidth website his unpled immunity defense should be assessed as if he were an ISP. See Doc. 17 at 15 ("lawsuits seeking to hold a service provider liable for its exercise of a publisher's traditional editorial functions…"), 16 (his "providing a home [on the Dreamwidth website] for … [the prior anonymous defamatory] comments … was a quintessential editorial function"), 16 ("Newman was both a … [LiveJournal] moderator and commenter" and Section 230 immunity covers ISPs "and users equally, including website moderators like Newman"), 17 (immaterial "how many times an …[ISP] publishes information provided by another information content provider"), 18 (an ISP "who merely hosts or republishes defamatory content"), 19 ("reposting …well within a publisher's traditional editorial functions").

[6] In doing so, Congress did not seek to immunize "the *creation* of content." *Id.* (emphasis original).

would treat [the defendant] as the publisher or speaker of that information.'

*Federal Trade Commission v. LeadClick Media, LLC,* 838 F.3d 158, 173 (2d Cir. 2016) citing and quoting *Universal Communication Systems, Inc. v Lycos*, 478 F.3d 413, 418 (1st Cir. 2007). Immunity only applies if, as applicable here, the user "is not also an information content provider" of the content which gives rise to the underlying claim." *Id*. at 174.

Section 230's explicit general public policy justifying immunity rests on the passive proffer of a forum, a neutral, electronic bulletin board that "serve[s] as [an] intermediar[y] for other parties' potentially injurious messages." *Lycos*, 478 F.3d at 419 (quotation and citations omitted). "Thus, an …[ISP] remains liable for its own speech." *Id*. Here the Plaintiff sues Newman to hold him liable for his own speech he voluntarily, indeed maliciously, published as a user of the Dreamwidth website.[7]

The 9th Circuit provides guidance "how to determine when, for purposes of this statute, a plaintiff's theory of liability would treat a defendant as a publisher or speaker of third-party content." *Barnes v. Yahoo!, Inc.,* 570 F. 3d 1096, 1101 (9th Cir. 2009) (as amended (Sept. 28, 2009).

> [W]hat matters is whether the cause of action inherently requires the court to treat the defendant as the 'publisher or speaker' of content provided by another. To put it another way, courts must ask whether the duty that the plaintiff alleges the defendant violated derives from the defendant's status or conduct as a 'publisher or speaker.'

---

[7] Cf. *Doe v. McMillan*, 412 U.S. 306, 317, 319-20 (1973)(the immunity doctrine for public officials provides no shield unless the volitional publication is sufficiently connected with the proper functioning of the public purpose being served). The publisher of a libel, even the Public Printer and Superintendent of Documents disseminating the congressional record outside of Congress, will only be shielded with immunity upon a determination that such publication served a legitimate legislative function. *Id.* at 320-324.

*Id.* at 1102. The First Circuit does not disagree with the Ninth Circuit "material contribution" rationale. See *Jane Doe No. 1 v. Backpage.com. LLC*, 817 F. 3d 12, 19 (1st Cir. 2016); *Airbnb, Inc. v. City of Boston*, 386 F. Supp. 3d 113, 120 n. 5 (D. Mass. 2019) (Court "perceives no material differences between how the …[Ninth Circuit and the First Circuit] interpret the CDA"). See *Federal Trade Commission v. LeadClick Media, LLC*, 838 F.3d 158, 174, 175 (2d Cir. 2016)( "We have recognized that a defendant will not be considered to have developed third-party content unless the defendant directly and 'materially' contributed to what made the content itself 'unlawful.'"); *FTC v. Accusearch, Inc.,* 570 F.3d 1187, 1205 (10th Cir. 2009).[8]

2. <u>Newman is the legally responsible information content provider of the 2017 defamation published on Dreamwidth.</u>

As of 2017 the continuing publication on the LiveJournal website and/or other websites of the numerous defamatory statements originally published by a number of anonymous users was not actionable. While the complaint references defamatory statements made on LiveJournal and other websites, see AC ¶8, the Plaintiff does not contend, as Newman posits (Doc. 17 at 14 and n3[9]), that the presence then or now on LiveJournal or other websites of those statements "support liability" against Newman. The Plaintiff seeks recourse for what Newman published on Dreamwidth in 2017. AC ¶21.

That "but for" those persons having provided the original content to the LiveJournal or other websites there would be no case is immaterial; they have no legal responsibility for what

---

[8] See also *La Liberte v. Reid*, 966 F.3d 79, 90 (2d Cir. 2020).

[9] Newman's footnote 3 accurately recites the communications between counsel. It turns out that while two of the statements referenced in paragraph 8 had been originally posted not on LiveJournal but elsewhere, all three statements, regardless of where originally published, were in fact republished by Newman on Dreamwidth in 2017. AC ¶21. Newman acknowledges Plaintiff only sues Newman for what he published on Dreamwidth. Doc. 17 at 13.

makes the 2017 Dreamwidth publication actionable. There is no general immunity under Section 230 from publishing libel that is derived from third party content. *Barnes v. Yahoo!, Inc.,* 570 F. 3d 1096, 1099 (9th Cir. 2009) ("neither...subsection [§230(c)(1)] nor any other declares a general immunity from liability derived from third-party content"). In his 2017 post on the Dreamwidth website it was Newman alone who voluntarily provided the content, *i.e.,* a compilation of copies of those defamatory statements published many years ago. Because the original authors are not the information content providers of the actionable speech published on the Dreamwidth website the claim does not seek to treat Newman as the "publisher or speaker" of content provided by another.

So too immaterial is that Newman did not originally compose or write any of the original defamatory statements. By his republication of the compilation of defamatory statements on the Dreamwidth website Newman violated a duty "derive[d] from…[his] status or conduct as a publisher or speaker." *Barnes v. Yahoo!, Inc.,* 570 F. 3d. at 1102. *See Appleby* v. *Daily Hampshire Gazette,* 395 Mass. 32, 36 (1985); *Wolsfelt v. Gloucester Times*, *supra*. Newman is responsible for his own actions. *FTC v. Accusearch, Inc.,* 570 F.3d at 1205.

Newman's arguments ignore the Ninth Circuit's widely accepted "'material contribution' to activity test" whereby courts

> have consistently drawn the line at the "crucial distinction between, on the one hand, taking actions (traditional to publishers) that are necessary to the display of unwelcome and actionable content and, on the other hand, responsibility for what makes the displayed content illegal or actionable."

*Kimzey v. Yelp! Inc.*, 836 F.3d 1263, 1269 n.4 (9th Cir. 2016)[10]. See *FTC v LeadClick Media LLC*, 838 F. 3d 158, 173-74 (2d Cir. 2016)(same); *FTC. v. Accusearch Inc.*, 570 F.3d 1187, 1198 (10th Cir. 2009)(same).

Through his conduct Newman made the defamatory "misinformation…[his] own" in a manner the First Circuit anticipated would be outside Section 230 immunity. *Universal Communication Systems, Inc. v Lycos*, 478 F.3d 413, 421 (1st Cir. 2007).

3. <u>Contrary to Newman's misleading contentions he did not merely "migrate" the discussion group from LiveJournal to Dreamwidth.</u>

Newman's motion demands dismissal contending that without alteration of the prior defamatory statements he merely "migrat[ed] them to a new server." Doc. 16 at 2. In his brief Newman purports to clarify this unpled, unsupported affirmative defense. Newman postulates that because he merely "[c]hang[ed] the hosting service" he cannot be "liable for other users' words." Doc. 17 at 17.

Newman's "migration" contention misrepresents the record. The original defamatory statements remain on the LiveJournal website. AC ¶17.[11] The LiveJournal website and the

---

[10] Newman's citation of *Kimzey*, Doc. 17 at 17, 18, is off point. In *Kimzey* the plaintiff locksmith sued Yelp because it published two negative business reviews posted by a customer of the plaintiff. Newman also cites *Jones v. Dirty World Entertainment Recordings LLC* 755 F. 3d 398, 403-04, 415-16 (6th Cir. 2014), Doc. 17 at 17, 18, 19. There the Sixth Circuit "adopt[ed the Ninth Circuit's] material contribution test," 755 F. 3d at 413; at 410 ("[W]e interpret the term "development" as referring not merely to augmenting the content generally, but *to materially contributing to its alleged unlawfulness*" )(emphasis original). In reversing the district court's judgment against both the website and a moderator the Sixth Circuit rejected the suggestion that "when an interactive computer service provider adds commentary to third-party content that "ratifies or adopts" that content, then the provider becomes a "creator" or "developer" of that content and is not entitled to the CDA's protection." *Id.* at 415.

[11] Upon information and belief the two statements referenced in paragraph 8 of the complaint that were not published on the LiveJournal website remain on their original websites as well.

Dreamwidth website are materially different and also aimed at fundamentally different audiences. *Id*. ¶¶7, 18, 19. Newman did not move the website.[12] While the original defamatory posts on LiveJournal and the other websites were made by numerous people, *id.* ¶8, it was Newman who copied them and then decided to post them on Dreamwidth. *Id.* ¶¶ 16, 20, 21. That some of the defamatory comments were originally published on "[web]sites where Newman had no control," Doc. 17 at 12, is immaterial. By reposting the defamation on Dreamwidth Newman was the content provider who published the defamation to a fresh audience at a fresh website and via Google and other search engines made the actionable speech available to the world with a much more recent time timestamping. Doc. 9 ¶40.[13]

4. <u>Contrary to Newman's contentions, the Plaintiff does not allege that Newman's "editorial like comments" are libelous (Doc. 17 at 19-20).</u>

Newman mischaracterizes the complaint. Plaintiff does not purport to hold Newman liable for "what makes another party's statement actionable by commenting on that statement *post hoc*." Doc. 17 at 19 (quotations and citations omitted). Much of the complaint allegations

---

[12] To the extent of technical interest to the Court, and while not pleaded, we note this was not a so-called database transfer whereby one takes a hard drive of the LiveJournal content and plugs the data into a new website. By way of example that is why images on LiveJournal did not get imported from LiveJournal to Dreamwidth. Upon information and belief among other material differences the respective computer formats for the two websites are different as well as incompatible. In all events there is no dispute Newman copied each defamatory post and re-published the copied posts on Dreamwidth.

[13] The *Atkinson* case, cited by Newman Doc. 17 at 17, in *dicta* explains that "even under the single publication rule… [a newspaper's] website may be republished and create a new cause of action for defamation if the website is substantially modified … Republication triggers the start of a new statute of limitations and occurs upon a separate aggregate publication from the original, on a different occasion, which is not merely a delayed circulation of the original edition. … It is clear that the justification for this holding is that the second publication is intended to and does reach a new audience." *Atkinson v. McLaughlin*, 462 F. Supp. 2d 1038, 1052 (D. N.D. 2006) citing *Churchill v. State*, 876 A.2d 311, 317 (N. J. Super. A.D. 2005); *Firth v. State of New York*, 775 N.E.2d 463, 465 (N.Y. 2002).

including that as a moderator of the discussion group on the LiveJournal website Newman offered "editorial like comments," (AC ¶10), that Newman knew the LiveJournal posts were defamatory when he reposted them in 2017, and that later in 2017 he posted a report about the Zaiger case, (*id*. ¶¶11-12, 14-16, 29-34) are allegations of malice and/or improper motive.

B. *Copyright Infringement.*

"To establish copyright infringement under the Copyright Act, two elements must be proven: (1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original." *Johnson v. Gordon*, 409 F.3d 12, 17 (1st Cir. 2005)(quotations and citations omitted).

1. Newman's Fair Use affirmative defense is not established on the face of the Complaint.

Fair use is an avoidance "affirmative defense" as to which the alleged infringer has the burden of proof. *The Holy Transfig. Monastery v. Archbishop Gregory*, 685 F. Supp. 2d 217, 226 (D. Mass. 2010) aff'd sub nom *Soc'y of the Holy Transfiguration Monastery, Inc. v. Archbishop Gregory,* 689 F. 3d 29 (1st Cir. 2012). Because "fair use presupposes 'good faith' and 'fair dealing,'" *Harper & Row Publishers, Inc*., 471 U.S. at 562–63, whether the alleged infringer demonstrates an equitable basis to avoid liability presents a mixed question of fact and law in assessing and weighing the four non-exclusive 17 U.S.C. § 107 factors viewed through the Chancellor's lenses. *Id.* at 560-61.[14] The four statutory factors "may [not] be treated in isolation,

---

[14] *Id*. at 560-61 (citations omitted):

> The factors enumerated in the section are not meant to be exclusive: "[S]ince the doctrine is an equitable rule of reason, no generally applicable definition is possible, and each case raising the question must be decided on its own facts." … The four factors identified by Congress as especially relevant in determining whether the use was fair are: (1) the purpose and character of the use; (2) the nature of the copyrighted work; (3) the substantiality of the portion used in relation to the copyrighted work as a whole; (4) the effect on the potential market for or value of the copyrighted work.

… [a]ll are to be explored, and the results weighed together…". *Campbell v. Acuff-Rose Music, Inc.*, 510 U.S. 569, 578 (1994).

> As the Supreme Court and Congress have insisted, fair use calls for a case-by-case analysis that attends to a range of equitable considerations in light of the ends of the copyright law[s] …Since the doctrine is an equitable rule of reason, no generally applicable definition is possible, and each case raising the question must be decided on its own facts.

*Sony BMG Music Entertainment v. Tenenbaum*, 672 F. Supp. 2d 217, 238 (D. Mass. 2009)(citations and quotations omitted).

While in limited appropriate cases the fair use defense might be raised in a motion to dismiss, its adjudication "involve[s] a more detailed analysis of the facts at issue and are best resolved by summary judgment or adjudication at trial.[15]" *Id.* at 220 n.2 (quotations and citations omitted).

2. <u>Proof of Newman's unpled purported fair use defense is not evident from the face of Plaintiff's complaint.</u>

*a. First statutory factor; "the purpose and character of the use."* Going largely outside the complaint Newman summarily contends his use "had a noncommercial purpose and transformative character." Doc. 17 at 17. Assuming *arguendo* the fact finder determines that Newman realized no economic benefit from his unauthorized reproduction on Dreamwidth, there is no "<u>evidentiary</u> presumption of fair use for all private or not-for-profit uses." *Sony BMG Music Entertainment v. Tenenbaum*, 672 F. Supp. 2d at 226 (emphasis original); *The Holy Transfig. Monastery v. Archbishop Gregory*, 685 F. Supp. 2d 217, 227 (D. Mass. 2010) aff'd sub nom *Soc'y of the Holy Transfiguration Monastery, Inc. v. Archbishop Gregory,* 689 F. 3d 29 (1st Cir.

---

[15] While granting summary judgment that on the fully developed undisputed facts the defendant's filing sharing use did not "assert a plausible fair use defense" (*id*. at 35-37), Judge Gertner assumed without deciding "that fair use is jury question." *Id*. at 223-24.

2012)(that alleged infringer's asserted use is not commercial is not dispositive). Indeed "removing money from the equation does not, under copyright law, remove liability…". *Id.* at 61.

Newman acknowledges that he is alleged to have used his unauthorized reproduction "as an integral part of…[his] defamatory statements." Doc. 17 at 11. See AC ¶ 1. Again going outside the face of the complaint Newman summarily concludes that his use "had a distinct and transformative purpose[16] as "criticism or commentary on" the Plaintiff's copyrighted work. Doc. 17 at 8. Assuming the defense to be properly raised it will be for the fact finder at trial to assess and weigh Newman's good faith in order to determine Newman's motivation(s) and hence purpose(s) served by his unauthorized use.

"In evaluating character and purpose [of a defendant's use]" the Court should not ignore a defendant's intent; and [should consider a]lso…the propriety of the defendant's conduct. Fair use presupposes good faith and fair dealing." *Harper & Row, Publishers, Inc. v. Nation Enterprises*, 471 U.S. 539, 562-63 (1985).

From the face of the complaint any preliminary view of the character and purpose factor weighs against fair use.

---

[16] According to the US Copyright Office: "Transformative uses are those that add something new, with a further purpose or different character, and do not substitute for the original use of the work." https://www.copyright.gov/fair-use/more-info.html. House Report No. 94-1476 notes some examples from the Register of Copyright's 1961 Report to

> give some idea of the sort of activities the courts might regard as fair use under the circumstances: "quotation of excerpts in a review or criticism for purposes of illustration or comment; quotation of short passages in a scholarly or technical work, for illustration or clarification of the author's observations; use in a parody of some of the content of the work parodied; summary of an address or article, with brief quotations, in a news report; reproduction by a library of a portion of a work to replace part of a damaged copy; reproduction by a teacher or student of a small part of a work to illustrate a lesson; reproduction of a work in legislative or judicial proceedings or reports; ….

16

i. *Transformative*. As to whether the purported non-commercial use is transformative, a potential additional consideration for assessment of the first statutory factor, Newman cannot ask the Court to just take his word that his reproduction constitutes "a productive use, resulting in some added benefit to the public beyond that produced by" Plaintiff's work. *The Holy Transfig. Monastery,* 685 F. Supp. 2d at 227.

Merely copying and reproducing the work is not transformative. *Id.*; see note 16 *supra*. On the pled record it presumes too much for Newman to contend the Court must find, even assuming such to be material, that his unauthorized reproduction "had a substantially different purpose than" Plaintiff's copyrighted work. Doc. 17 at 8. Newman's contentions that his reproduction must be determined to be a "transformative" preservation of a record of Plaintiff's work and/or that the mere reproduction constitutes "transformative" criticism or commentary warranting First Amendment protection, Doc. 17 at 8-10, are just unpled conclusory allegations. As such they provide no weight on the fair use scales.

In all events copying the entire work, as Newman admits, standing alone is not transformative. *Holy Transfiguration,* 689 F. 3d at 60.

b. *Second statutory factor; "nature of the copyrighted work."* Newman's speculations as to the Plaintiff's intentions in first publishing the work and his conclusory assessment of whether the work is factual or creative[17], Doc. 17 at 9-10, have no weight on this premature fair use scale.

c. *Third statutory factor. "amount and substantiality of use."* This factor can only be assessed upon a properly developed record. While the inquiry is "pliable" and while fair use is

---

[17] See *Feist Publications, Inc. v. Rural Tel. Service Co.*, 499 U.S. 340, 345 (1991)( To be sure, the requisite level of creativity is extremely low; even a slight amount will suffice").

17

not precluded, "copying an entire work generally will militate against a finding of fair use." *Holy Transfiguration,* 689 F. 3d at 62.

Newman contends the third factor is neutral because his verbatim copying of the copyrighted work amounting to only "a miniscule taking: a single post from a thread of 526 comments…was necessary to…[his] historical preservationist purposes." Doc. 17 at 10.[18] As no such transformative purpose is evident on this record, the third factor weighs against fair use.

    d. *Fourth factor; "effect on the market."* Pointing out that the Plaintiff "has not plausibly alleged any" defense to Newman's unpled affirmative defense, Doc. 17 at 11, Newman argues this factor "weighs strongly in favor of fair use because no such effect is plausible." Doc. 17 at 10.

> But the fourth factor of the fair use inquiry cannot be reduced to strictly monetary terms. Statutory law expressly states that it considers not only the impact of a work's use on the potential market, but also its effect on the "*value of the copyrighted work.*"

*Holy Transfiguration,* 689 F. 3d at 64.

Of value to the owner of a copyrighted work is his exclusive right to control, or restrict, the reproduction of his work. 17 U.S.C. §106. That value, that exclusive right, is expressly subject to, among other things, 17 U.S.C. §107. Absent a plausibly pled fair use affirmative defense the fourth factor can only be neutral.

    e. *Equity and Newman's good faith and fair dealing.* Finally, assuming *arguendo* any evidence supporting this unpled affirmative defense there can be no adjudication of fair use

---

[18] Moreover, his "preservation claim" is belied by the fact that the content remains available to the world by way of the LiveJournal website to which the work was originally posted.

without the fact finder's assessment of "the propriety of…[Newman's] conduct" and whether in equity he has acted in good faith. *Harper & Row Publishers, I*nc., 471 U.S. at 562–63

## V.     CONCLUSION.

The Plaintiff requests the Court to deny the Defendant's motion to dismiss.

**REQUEST FOR ORAL ARGUMENT**

Pursuant to LR 7.1(d) Plaintiff requests oral argument on this dispositive motion.

>Respectfully submitted,
>
>JONATHAN MONSARRAT
>By his attorneys,
>
>*/s/  Richard A. Goren*
>Richard A. Goren, Esq. BBO #203700
>Law Office of Richard Goren
>29 Crafts Street, Suite 500
>Newton MA 02458-1461
>617-933-9494
>rgoren@richardgorenlaw.com
>
>*/s/ Ryan D. Sullivan*
>Ryan D. Sullivan (BBO#660696)
>rsullivan@curranantonelli.com
>Curran Antonelli, LLP
>10 Post Office Square, Suite 800 South
>Boston, MA 02109
>617-410-6340
>rsullivan@curranantonelli.com

**CERTIFICATE OF SERVICE**

  I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) on December 14, 2020

            */s/Richard A. Goren*