UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| JONATHAN MONSARRAT, )<br>)<br>*Plaintiff*, )<br>) CIVIL ACTION NO. 20-cv-10810-PBS<br>v. )<br>)<br>RON NEWMAN )<br>)<br>)<br>*Defendant*. )<br>) | |

**PLAINTIFF'S COMBINED OPPOSITION TO DEFENDANT'S REQUEST FOR JUDICIAL NOTICE AND MOTION TO STRIKE OR IN THE ALTERNATIVE TO FILE SCANDALOUS MATERIALS UNDER SEAL**

The Plaintiff Jonathan Monsarrat hereby opposes Defendant Ron Newman's Request for Judicial Notice of Proposed Exhibits (Doc 18) in support of his Motion to Dismiss (Docs. 16 and 17) and moves to strike or in the alternative have certain scandalous proposed exhibits filed under seal. The Request for Judicial Notice was filed in violation of the spirit, if not the letter of, Local Rule 7.1 (a)(2).  None of the 21 proposed exhibits is helpful, much less material, to the Court's *Twombly/Iqbal* plausibility assessment of either the defamation claim or the copyright infringement claim. Because 18 of the 21 proposed exhibits include impertinent, scandalous statements concerning Plaintiff which statements were part and parcel of his no-longer actionable 2013 cause of action, if somehow probative of the Court's *Twombly/Iqbal* plausibility assessment they should be filed under seal. In support Plaintiff files the affidavit of his counsel Richard Goren of even date.

    A. *None of Newman's proposed Judicial Notice exhibits is helpful, much less material, to the Court's Twombly/Iqbal plausibility assessment.*

Newman describes Exhibits A through F as "documents filed…in [Plaintiff's] 2013 lawsuit." Doc. 18 at 2. Contrary to Newman's contention (*id*. at 3) these documents are not "explicitly incorporated by reference [into Plaintiff's complaint]."

Each of Exhibits A, B, C and D feature statements by third parties that defame the Plaintiff and which statements the amended complaint ("AC") acknowledges are no longer actionable. See AC ¶¶ 8-12, 22; Goren Aff. ¶5.[1]  Those statements are not material to the Court's determination of whether Plaintiff plausibly pleaded a claim for defamation against Newman for his 2017 publication of on Dreamwidth.  In seeking to dismiss the defamation claim Newman does not dispute that what he posted on Dreamwidth is *per se* defamatory.  Rather Newman contends that accepting the complaint's factual allegations as true he has absolute immunity. Doc. 17 at 12-20. Consideration of Exhibits A through F is neither required nor remotely helpful; accepting the factual allegations of the complaint Plaintiff has pleaded a plausible defamation claim against Newman for what he published on Dreamwidth in 2017.  See Plaintiff's Opposition to Motion to Dismiss, Doc. 20, at 6-14.

Newman describes Exhibits G and H as 2010 Somerville police blog publications. Doc. 18 at 4; Goren Aff. ¶6. Newman contends they are probative of his unpled affirmative fair use defense on Plaintiff's copyright claim.  See Doc. 18 at 4-5.  Proposed exhibits G and H include operative hyperlinks to "446 comments" which, upon information and belief, feature many of the same 2009-2013 pejorative and/or defamatory statements that had been the subject of Plaintiff's unsuccessful 2013 Massachusetts state court action. Goren Aff. ¶6.  Consideration of Exhibits G and H is neither required nor remotely helpful; accepting the factual allegations of the complaint

---

[1] Exhibits E, Plaintiff's 2013 dismissal of his 2013 complaint, and F, the Superior Court docket entries for the 2013 action, are immaterial.

Plaintiff has pleaded a plausible copyright infringement claim.  See Plaintiff's Opposition to Motion to Dismiss, Doc. 20 at 14.

Newman describes Exhibits I through K as threads of 2009 through 2013 publications on LiveJournal. Doc. 18 at 6. While those "threads" were part of the no longer actionable 2013 complaint, see Goren Aff. ¶¶ 7-9, in his motion to dismiss Newman does not contest the *per se* defamatory nature of his 2017 publication on Dreamwidth.  Exhibits I through K are not probative of Newman's as yet unpled immunity defense.  Moreover, exhibits I, J and K are replete with scandalous and defamatory statements; and, exhibits I and K include operative hyperlinks to the no longer actionable 2013 complaint. Goren Aff. ¶¶ 7-9.

Exhibits L and M are of no assistance to the Court in deciding the motion to dismiss. Each includes hyperlinks to the 2013 complaint. Goren Aff. ¶¶ 10,11. Plaintiff does not allege Newman's "editorial" like comments on the Zaiger case to be defamatory; rather they are allegations of Newman's malice and/or improper motive. See Opposition to Motion to Dismiss, Doc. 20 at 13-14.

Newman describes Exhibit N as a June 2013 thread about the 2013 case; it includes an operative hyperlink to an unfiled brief in the 2013 case signed by attorney Booth which in turn includes two operative hyperlinks to two 2010 LiveJournal postings complained of by the 2013 complaint. Goren Aff. ¶12.  Newman describes Exhibit O as a compilation of posts tagged "jonmon" from July 2008 to December 26, 2017; Exhibit O includes operative hyperlinks to attorney Booth's unfiled 2013 brief and the LiveJournal posts. Goren Aff. ¶13. Exhibits N and O are replete with scandalous statements about the Plaintiff. Accepting the factual allegations of the complaint as true, hence stating a plausible claim against Newman for his 2017 defamation, neither Exhibit N nor Exhibit O is probative on Newman's unpled affirmative immunity defense.

Newman describes exhibits P and Q as Wikipedia content concerning the two websites, LiveJournal and Dreamwidth. Doc. 18 at 9-11.  Accepting the factual allegations of the complaint as true, e.g., LiveJournal and Dreamwidth are two separate websites (AC¶¶ 7, 18,19), these hearsay exhibits are not probative of Newman's unpled immunity affirmative defense on which he seeks dismissal of the defamation claim.

Newman describes Exhibits R, S, T and U as documents from the so-called Zaiger case. Doc. 18 at 12-15.  But Plaintiff does not allege that any of Newman's so-called editorial like comments in his postings about the Zaiger case are libelous; rather they are allegations of Newman's malice and/or improper motive. See Opposition to Motion to Dismiss, Doc. 20 at 13-14. And exhibits S, T and U include scandalous material from the 2013 complaint. Goren Aff. ¶¶14-16.

> B. *The November 30, 2020 Request for Judicial Notice was filed in violation of Local Rule 7.1(a)(2).*

Local Rule 7.1(a)(2) states, "No motion shall be filed unless counsel certify that they have conferred and have attempted in good faith to resolve or narrow the issue." Defendant's November 30, 2020 Request for Judicial Notice (Doc. 18 at 15) includes a "CERTIFICATE OF COMPLIANCE WITH RULE 7.1(a)(2)

> I certify that on November 24, 2020, I sought to confer with Plaintiff's counsel Richard Goren in a good-faith attempt to resolve or narrow the issues in dispute in this request but have not reached resolution before filing."

There was in fact no good attempt to resolve or narrow the issues of putting unnecessary, scandalous and defamatory statements of and concerning the Plaintiff into the record. Goren Aff. ¶2. See also *id*. ¶17.

Newman's LR 7.1(a)(2) Certificate of Compliance does not fairly or materially accurately portray the communications of counsel. In addition to failing to accurately reflect

4

counsels' pre-filing communications Newman did not include the understanding the parties would confer after his filing.

On November 24, 2020 Newman's counsel informed Plaintiff's counsel in writing that Newman intended to put into the motion to dismiss record the 2013 state court complaint along with four of its exhibits and certain web pages, as well as certain papers in the so-called Zaiger case for the stated purpose to enable this Court to "review the underlying statements as originally published and on Dreamwidth in their full context." Goren Aff. ¶2. In writing Plaintiff's counsel replied that doing so "seems uncalled for but perhaps you can explain when we confer." *Id*. On Friday November 27th Plaintiff's counsel wrote to Newman.

> Your proposed filing of these materials would   republish in the public record unnecessary, scandalous materials about Mr. Monsarrat that I cannot conceivably even begin to imagine  probative on your motion to dismiss without first seeing the motion to dismiss.  So I will confer with you about these proposed judicial notice
> filings after reviewing your motion to dismiss.

*Id.* Three hours later Newman's counsel in material part wrote in reply

> We will file the request for judicial notice along with the motion to dismiss on Monday, because we are seeking notice of highly probative materials that are necessary for the Court to assess the motion. Analyzing any copyright infringement claim entails a review of the plaintiff's copyrighted work and the defendant's use in their full context. Likewise the Court must examine the allegedly defamatory statements in the full context in which they were published, not just the partial quotations in the complaint. We will also provide the Court the full Wikipedia pages and December 2017 Dreamwidth post quoted in the complaint.
>
> Filing these materials should not be objectionable. They are either directly incorporated into the complaint by reference or otherwise subject to judicial notice. Further, Mr. Monsarrat filed many of the materials in his state court action in 2010 {*sic* 2013} on the public docket, where they remain, and he did not object to the filing of the three exhibits in the *Zaiger* action on the public docket, where they remain. … [A]nd our request for judicial notice will note that you will confer after the filing.

*Id*.

After the Request for Judicial Notice was filed and having reviewed the 21 proposed exhibits Plaintiff's counsel initiated LR 7.1 communications about his contemplated motion to strike or in the alternative to file the scandalous exhibits under seal. *Id.* ¶17.  Plaintiff's counsel complained that many of Newman proposed Judicial Notice exhibits

> include fully functional "hyper links" to both the 2013 complaint and the online defamatory content underlying the 2013 case. In other words anyone accessing many of these publicly accessible proposed "judicial notice" exhibits is invited to republish the defamatory statements that were the subject of the 2013 case.

Insisting the proposed exhibits are necessary Newman's counsel contends that Plaintiff has "not identified a proper basis to seal, strike, or withdraw any of the exhibits, which are all relevant to deciding the motion to dismiss." *Id.*

Local Rule 7.1 carries "the force of law…binding upon the litigants and upon the court itself." *Cronin v. Commonwealth of Massachusetts*, CIVIL ACTION No. 03-11749-RGS, at *2 (D. Mass. Feb. 5, 2004). In its discretion where equitable the Court may strike a party's filing made without compliance to the Local Rules. See *id*. citing *United States v. Roberts*, 978 F.2d 17, 20 (1st Cir. 1992); *Nepsk, Inc. v. Town of Houlton,* 283 F.3d 1, 7 (1st Cir. 2002);*Ramsdell v. Bowles*, 64 F.3d 5, 8 (1st Cir. 1995).

Newman's LR 7.1(a)(2) certification is at best misleading.  Aware of the scandalous and impertinent nature of most of his proposed judicial notice exhibits Newman dangled the possibility of conferring after Plaintiff had reviewed the motion to dismiss.  Contrary to his implicit certification Newman did not seek in good faith to narrow the issues.  Upon reviewing the filed motion to dismiss and the filed request for judicial notice including the voluminous 21 exhibits, while disputing the contextual probity of the exhibits Plaintiff proposed an agreement enabling Newman to make his argument supported by the exhibits if filed under seal. Instead

Newman insists Plaintiff has not "not identified a proper basis to seal, strike, or withdraw any of the exhibits, which are all relevant to deciding the motion to dismiss."

> C. *The 21 exhibits are not probative to a determination of Newman's motion to dismiss. Pursuant to the Court's inherent authority because 18 of the 21 exhibits contain impertinent, scandalous statements about the Plaintiff they should be stricken from the record. If and to the extent at all probative the 18 exhibits should be filed under seal pending further Order.*

Newman's purported exhibits in support of his motion to dismiss serve no other purpose than to put into the record the no longer actionable defamation that was the subject of Plaintiff's 2013 complaint. None of the scandalous exhibits is even remotely necessary for a determination of whether Plaintiff's amended complaint plausibly states a claim for which relief can be granted. But for the litigation privilege these immaterial, scandalous statements would be fair grist for a defamation action, and as such are wholly inappropriate in pleadings before this Court and should be stricken.

The Court has the inherent power to control its docket and while it is true the Court should initially look to Rule 11, Rule 12(f) or to 28 U.S.C. §1927, "if in the informed discretion of the court, neither the statute nor the Rules are up to the task, the court may safely rely on its inherent power," to "sanction bad faith conduct." *Chambers v. NASCO, Inc.,* 501 U.S. 32, 50 (1991). This inherent power extends to striking one or more briefs or other filings "full of vituperative, unwarranted, and impertinent expressions as to opposing counsel." See *Supreme Council of the Royal Arcanum v. Green*, 237 U.S. 531, 546–47 (1915). Indeed to protect the decorum of proceedings before it, the Court may strike such material *sua sponte*. Fed. R. Civ. P. 12(f); see *Chambers v. NASCO, Inc.*, 501 U.S. at 43 (quoting Anderson v. Dunn, 6 Wheat. 204, 227 (U.S. 1821)).

> Scandalous material is that which 'casts an adverse light on the character of an individual or party.'" … Scandalous pleadings for the purpose of Rule 12(f) are those which, "

7

> 'reflect cruelly' upon the defendant's moral character, use 'repulsive language' or 'detract from the dignity of the court' ... to be scandalous such 'degrading charges must be irrelevant, or, if relevant, must be gone into in unnecessary detail.' "

*Nault's Auto. Sales, Inc. v. Am. Honda Motor Co., Acura Auto. Div.*, 148 F.R.D. 25, 30, 35 (D. N.H. 1993) (citations omitted)(striking memoranda opposing motion to strike as scandalous). See 5C C. Wright and A. Miller, Federal Practice and Procedure (Civil) 2d § 1382, at 465 (2004) ("'Scandalous' matter is that which improperly casts a derogatory light on someone, most typically on a party to the action."); 2 Moore's Federal Practice § 12.37[3] at 12-97 ("'Scandalous' generally refers to any allegation that unnecessarily reflects on the moral character of an individual or states anything in repulsive language that detracts from the dignity of the court."). Cf. *Gauthier v. United States*, No. CIV.A. 4:10-40116, 2011 WL 3902770, at *11 (D. Mass. Sept. 2, 2011) ("Although the rule refers only to pleadings, courts may use the rule to strike portions of affidavits and other submissions. *Pigford v. Veneman,* 225 F.R.D. 54, 58 n. 8 (D. D.C. 2005)").

The striking of offensive material is particularly appropriate when the offensive material is not responsive to an argument but, rather, constitutes an inappropriate attempt to abuse the Court's process to attack an individual personally. See *Magill v. Appalachia Intermediate Unit 08*, 646 F. Supp. 339, 343 (W.D. Pa. 1986) (striking allegations that "reflect adversely on the moral character of an individual who is not a party to this suit" which were "unnecessary to a decision on the matters in question"). See also *Cairns v. Franklin Mint Co.*, 24 F. Supp. 2d 1013, 1037 (C.D. Cal. 1998) (striking allegation that "defendants are '[l]ike vultures feeding on the dead'").

The presence of these scandalous allegations in the public record, and accessible over the internet, greatly prejudice the Plaintiff in his personal life, adversely affect his entrepreneurial

efforts to develop augmented reality games to be marketed to young people of both sexes, and adversely affect his reputation. AC ¶¶27, 28, 39. Newman's putting these exhibits into the public record tracks the amended complaint's allegations of Newman's malice and/or improper motive, e.g., encouraging third parties to access defamatory statements put onto the record of the Zaiger case. See AC¶¶ 29-34.

    D. *Conclusion.*

For the foregoing reasons the Court should rule that Newman's exhibits are unnecessary to the Court's determination of the legal issues presented by his motion to dismiss.

 Because of the prejudice resulting to the Plaintiff if those exhibits remain in the public record, the Court should first deny Newman's motion to dismiss and then in the sound exercise of its discretion strike Newman's scandalous Exhibits.

In the alternative regardless of its action on Newman's motion to dismiss, the Court should order that Docs. 16-1, 16-2, 16-3, 16-4,16-7, 16-8, 16-9, 16-10, 16-11, 16-12, 16-13, 16-14, 16-15, 16-19, 16-20 and 16-21 be removed from the record and filed under seal pending further Order of the Court.

DATED: December 14, 2018

                Respectfully submitted,

                JONATHAN MONSARRAT
                *By his attorneys,*

                */s/  Richard A. Goren*
                Richard A. Goren, Esq. BBO #203700
                Law Office of Richard Goren
                29 Crafts Street, Suite 500
                Newton MA 02458-1461
                617-933-9494
                rgoren@richardgorenlaw.com

                */s/ Ryan D. Sullivan*
                Ryan D. Sullivan (BBO#660696)
                rsullivan@curranantonelli.com
                Curran Antonelli, LLP
                10 Post Office Square, Suite 800 South
                Boston, MA 02109
                617-410-6340
                rsullivan@curranantonelli.com

## CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 7.1

     I hereby certify that I conferred by email with Defendant's counsel about this opposition and motion to strike as specified in my affidavit of even date filed herewith in a good faith attempt to resolve or narrow the issues.

                */s/ Richard A. Goren*

## **CERTIFICATE OF SERVICE**

     I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF), on December 14, 2020.
                */s/ Richard A. Goren*