UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| JONATHAN MONSARRAT, | ) | Civil Action No. 20-cv-10810-RGS |
| | ) | |
| Plaintiff, | ) | **REPLY IN SUPPORT OF REQUEST** |
| | ) | **FOR JUDICIAL NOTICE;** |
| v. | ) | **OPPOSITION TO PLAINTIFF'S** |
| | ) | **MOTION TO STRIKE OR FILE** |
| RON NEWMAN, | ) | **UNDER SEAL** |
| | ) | |
| Defendant. | ) | *Leave to file granted 12/29/2020* |
| | ) | |

Jonathan Monsarrat ("Monsarrat") seeks to suppress the public record of this action. His opposition to Ron Newman's ("Newman") request for judicial notice, and motion to strike or file under seal pertinent materials, identifies no valid basis and the motion should be denied. Doc. 21.

In 2013, Monsarrat sued Newman and others over their online comments and alleged copyright infringements, and dismissed that state court action ("*Newman I*") with prejudice. Doc. 9 ¶¶ 11-12; Doc. 17 p. 1. In this sequel he is suing Newman over online records from and about that dispute: comments by Monsarrat and third parties that Newman migrated to another host server in 2017. Doc. 9 ¶¶ 16-21; Doc. 17 p. 1. Monsarrat's complaint, with no exhibits, offered the Court only fragments of the allegedly defamatory and infringing online posts, with no way to assess them in context. Doc. 9 ¶¶ 8, 21, 45; *see* Doc. 18 pp. 5-6. So Newman properly provided that context with his motion to dismiss. Doc. 16. He filed those records and related materials as exhibits to his motion directly material to its adjudication, requesting judicial notice. Doc. 16-1 through 16-21 (referred to herein as Exhibits A through U); Doc. 18.

Judicial notice of the exhibits is proper. Monsarrat's motion to strike or seal fails to carry his heavy burden to demonstrate that he is entitled to such disfavored forms of relief. Newman's filings complied with the Local Rules, and Monsarrat identifies no exhibit so scandalous and impertinent that it would override the presumption of public access to judicial records.

1

**LEGAL STANDARDS**

"The court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). Motions to strike "are narrow in scope, disfavored in practice, and not calculated readily to invoke the court's discretion." *Boreri v. Fiat S.P.A.*, 763 F.2d 17, 23 (1st Cir. 1985). "[T]here appears to be general judicial agreement … that [motions to strike] should be denied unless the challenged allegations have no possible relation or logical connection to the subject matter of the controversy and may cause some form of significant prejudice to one or more of the parties to the action." *United States v. Sampson*, 820 F. Supp. 2d 202, 241 (D. Mass. 2011) (*quoting* 5C Charles Alan Wright & Arthur R. Miller, Federal Practice & Procedure § 1382 (3d ed. 2004)). "Allegations are not properly stricken from a complaint merely because they sound scandalous. Only if such statements are both scandalous and irrelevant to the lawsuit or included for improper purposes are they properly stricken—not if they are relevant to the cause of action." *Islam v. Option One Mortg. Corp.*, 432 F. Supp. 2d 181, 199 n. 17 (D. Mass. 2006) (*citing* Wright & Miller § 1382).

Judicial records are presumptively open to public access. *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 597 (1978). "Public access to judicial records and documents allows the citizenry to 'monitor the functioning of our courts, thereby insuring quality, honesty and respect for our legal system.'" *FTC v. Standard Financial Mgmt. Corp.*, 830 F.2d 404, 410 (1st Cir. 1987) (*quoting In re Cont'l Ill. Sec. Litig.*, 732 F.3d 1302, 1308 (7th Cir. 1984)). "'[O]nly the most compelling reasons can justify non-disclosure of court records." *Id.* (*quoting In re Knoxville News-Sentinel Co.*, 723 F.2d 470, 476 (6th Cir. 1983)). A party seeking to seal court records must "demonstrate[] sufficiently compelling reasons to warrant cloaking the documents in secrecy." *Id.* at 412. "A finding of good cause [to seal documents] must be based on a particular factual demonstration of potential harm, not on conclusory statements." *Anderson v.*

2

*Cryovac, Inc.*, 805 F.2d 1, 7 (1st Cir. 1986) (*citing* Wright & Miller § 2035 (1970)); *accord Standard Financial*, 830 F.2d at 412 ("We decline to accept conclusory assertions as a surrogate for hard facts.").

## ARGUMENT

**I.     Each exhibit is pertinent and Monsarrat gives no valid basis to deny judicial notice.**

Each of Newman's exhibits is material to the claims and judicial notice is appropriate.

Monsarrat cavils that the motion to dismiss goes "outside the face of the complaint." Doc. 20 at 16. That is irrelevant. "The First Circuit has suggested a 'practical, commonsense approach' is best for determining what materials may be properly considered on a motion to dismiss." *Rederford v. US Airways, Inc.*, 586 F. Supp. 2d 47, 50 (D.R.I. 2008) (*quoting Beddall v. State St. Bank & Trust Co.*, 137 F.3d 12, 16 (1st Cir. 1998)), *aff'd*, 589 F.3d 30 (1st Cir. 2009). The Court may reach "facts susceptible to judicial notice." *Haley v. City of Boston*, 657 F.3d 39, 46 (1st Cir. 2011). Its review also encompasses "documents the authenticity of which are not disputed by the parties; … official public records; … documents central to plaintiffs' claim; … [and] documents sufficiently referred to in the complaint." *Monsarrat v. Zaiger* ("*Zaiger*"), 286 F. Supp. 3d 253, 256 (D. Mass. Dec. 21, 2017) (*quoting Watterson v. Page*, 987 F.2d 1, 3 (1st Cir. 1993)). "Moreover, the district court appropriately may consider the whole of a document integral to or explicitly relied upon in a complaint, even if that document is not annexed to the complaint." *Jorge v. Rumsfeld*, 404 F.3d 556, 559 (1st Cir. 2005); *accord Local No. 8 IBEW Ret. Plan & Trust v. Vertex Pharms., Inc.*, 838 F.3d 76, 78 n.3 (1st Cir. 2016).

Monsarrat does not question or dispute, and provides no reason to doubt, the authenticity or accuracy of any of the exhibits. *See Rail World Locomotive Leasing, LLC v. MBTA*, No. 16-cv-11541-DJC, 2017 U.S. Dist. LEXIS 70492, *6 (D. Mass. May 9, 2017); *Johansen v. Verizon Commc'ns, Inc.*, No. 08-cv-10096-NG, 2008 U.S. Dist. LEXIS 133682, *29 (D. Mass. Sept. 29,

2008). He cannot; the exhibits "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned," so they are "not subject to reasonable dispute" and subject to judicial notice. Fed. R. Evid. 201(b); *see* Doc. 18. Instead Monsarrat reflexively asserts that each of the exhibits is not "helpful," "material," "probative," or "necessary." Doc. 21 pp. 1-4. Those conclusory, unfounded assertions are not a valid basis to decline to consider any exhibit.

**A.    Most of the exhibits are incorporated into or sufficiently referenced in the complaint.**

The exhibits present facts central to Monsarrat's claims and are "fairly incorporated into the complaint." *Newman v. Krintzman*, 723 F.3d 308, 309 (1st Cir. 2013). Monsarrat alleges that Newman infringed his copyright and defamed him by republishing LiveJournal comments on Dreamwidth; therefore the LiveJournal and Dreamwidth pages at issue "effectively merge[] into the pleadings." *Beddall*, 137 F.3d at 17. "Although 'there is no requirement that the pleader attach a copy of the writing on which his action or defense is based[,] … when plaintiff fails to introduce a pertinent document as part of his pleading, defendant may introduce the exhibit as part of his motion attacking the pleading.'" *Fudge v. Penthouse Int'l, Inc.*, 840 F.2d 1012, 1015 (1st Cir. 1988) (quoting Wright & Miller § 1327 at 489 (1969)).

That should resolve any question about the propriety of judicial notice of Exhibits C, D, I, J, and K. The Court is "entitled to take notice of the full contents of the published [statements] referenced in the complaint, from which the truncated quotations were drawn." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 568 n. 13 (2007). Those exhibits show that each allegedly defamatory statement that appeared on Dreamwidth was part of a trove of discussion threads that had first appeared in the Davis Square LiveJournal forum. *See* Doc. 9 ¶ 21; Doc. 17 p. 13; *Fudge*, 840 F.2d at 1015 (no error in considering allegedly libelous article that "was absolutely central to" complaint); *accord Stanton v. Metro Corp.*, 438 F.3d 119, 123 (1st Cir. 2006).

Likewise, Exhibits G and H show that the same is true of the alleged infringement. *See*

4

Doc. 17 pp. 5-6; Exhibit C p. 95. Courts reviewing a motion to dismiss an infringement claim on fair use grounds typically take judicial notice of the allegedly infringed and infringing works. *Brownmark Films, LLC v. Comedy Partners*, 800 F. Supp. 991 (E.D. Wisc. 2011), *aff'd*, 682 F.3d 687 (7th Cir. 2012); *Dr. Seuss Enters., L.P. v. ComicMix LLC*, 256 F. Supp. 3d 1099, 1105 n. 1 (S.D. Cal. 2017). It is proper for the Court to take notice that the alleged republication included the entirety of the Davis Square LiveJournal threads, not just the allegedly defamatory and infringing posts.

Exhibit A, the *Newman I* complaint, is a public court record subject to judicial notice that merges with the instant complaint. It shows that the source of one of the allegedly defamatory statements was not LiveJournal but the *Wicked Local Somerville* blog page. Doc. 16 p. 2, Doc. 17 p. 14. That blog page shown in Exhibit B is also quoted and incorporated into the complaint. Doc. 9 ¶ 21(a); *see Airframe Sys. v. Raytheon Co.*, 520 F. Supp. 2d 258, 263 (D. Mass. 2007) ("where the plaintiff has referenced part of a document in the complaint, it is proper for the court to view the rest of that document so as to be able to understand it in context").

Also within the complaint is Exhibit L, a 2017 Dreamwidth post that Monsarrat quotes nearly verbatim to prop up baseless aspersions about "Newman's malice and/or improper motive." Doc. 21 p. 3. That contention rests on his allegation that Newman published the post "to encourage" people to read "Defendant's false and defamatory statements on his Dreamwidth 'jonmon' page." Doc. 9 ¶¶ 33(i), 34. So that "jonmon" page, compiling threads tagged with "jonmon" by users to identify that they concern Monsarrat—Exhibit O—is also sufficiently referenced in the complaint. Monsarrat assails Newman for his "republication of the compilation of [allegedly] defamatory statements on the Dreamwidth website." Doc. 20 p. 11. He specifically disclaims any allegation that Newman is liable for any comments he personally wrote; "Newman

5

did not originally compose or write any of the original defamatory statements." *Id.* Therefore, the allegation that the "jonmon" page includes "*Defendant's* false and defamatory statements," Doc. 9 ¶ 33(i), necessarily treats Newman "as the publisher or speaker of information provided by another information content provider" under 47 U.S.C. § 230(c)(1).

Thus, Exhibits A, B, C, D, G, H, I, J, K, L, and O each provide pertinent adjudicative facts, which "are simply the facts of the particular case … 'who did what, where, when, how, and with what motive or intent.'" Fed. R. Evid. 201 (1972 adv. comm. note) (*quoting* Prof. Kenneth Davis, 2 Administrative Law Treatise 353 (1958)). Monsarrat argues that the Court need not consider these exhibits and should look no further than his exhibit-free allegations when deciding the motion to dismiss. Doc. 21 pp. 2-3. That is not the First Circuit's position.

> … the court need not accept a complaint's "bald assertions" or "unsupportable conclusions." *Chongris v. Board of Appeals*, 811 F.2d 36, 37 (1st Cir. 1987). While a plaintiff only is obliged to make provable allegations, the court's inquiry into the viability of those allegations should not be hamstrung simply because the plaintiff fails to append to the complaint the very document upon which *by her own admission* the allegations rest. … We doubt that the drafters of the Civil Rules, who envisioned Rule 12(b)(6) motions as a swift, uncomplicated way to weed out plainly unmeritorious cases, would have countenanced such a result.

*Beddall*, 137 F.3d at 17. *See also Jorge*, 404 F.3d at 559.

**B.     The remaining exhibits are also properly subject to judicial notice.**

The other exhibits provide background information pertinent to the action, so they are subject to judicial notice and review for that purpose. *See IBX Jets, LLC v. Sullivan*, No. 16-cv-11604-IT, 2018 U.S. Dist. LEXIS 36962, *3 n. 1 (D. Mass. Mar. 7, 2018) (taking judicial notice of pleadings in prior litigation "for background to the dispute"); *Rodriguez-Ramos v. Hernandez-Gregorat*, 685 F.3d 34, 37 (1st Cir. 2012) (reviewing "facts susceptible to judicial notice, as necessary to place the allegations in context"). Materials that "provide background and context … cannot be said to be 'immaterial' [or] 'impertinent.'" *Labadie v. Rosario*, No. 05-cv-40148-

FDS, 2006 U.S. Dist. LEXIS 107965, *6 (D. Mass. June 22, 2006) (denying motion to strike).

Exhibits K, M, N, and O provide context for Newman's December 2017 Dreamwidth post (Exhibit L): an article and other Dreamwidth pages that he included in the post via hyperlinks. *See* Doc. 18 pp. 7-9. The Court may review them as well, to consider "the whole" of that post. *Jorge*, 404 F.3d at 559; *see Nicosia v. De Rooy*, 72 F. Supp. 2d 1093, 1102-03 (N.D. Cal. 1999). As the exhibits manifest, Newman's benign purpose for the December 2017 post was to briefly document the *Zaiger* dismissal through the lens of his 2013 victory in *Newman I*.

Exhibits P and Q, Wikpedia articles about LiveJournal and Dreamwidth quoted and thus incorporated in the complaint, provide context about the migration from LiveJournal to the new host site that is material to Monsarrat's copyright and defamation claims and Newman's fair use and Section 230 defenses. Newman specifically requested judicial notice of these adjudicative facts: LiveJournal's new speech-restrictive policies raised concerns over political censorship in April 2017, and within weeks, Newman copied the LiveJournal threads and made them available on Dreamwidth, an ad-free site. *See* Doc. 18 pp. 11-12. Monsarrat opposes on relevance and admissibility grounds, calling the Wikipedia articles hearsay and not probative of Newman's Section 230 defense. Doc. 21 p. 4. But documents and facts need not be admissible to be judicially noticed. *United States v. Bello*, 194 F.3d 18, 24 n. 8 (1st Cir. 1999) (*citing* 21 Wright & Graham § 5102, at 465). And the Court "may consider implications from documents attached to or fairly incorporated into the complaint." *Krintzman*, 723 F.3d at 309. Implications from the Wikipedia articles—that LiveJournal's new policies in April 2017 motivated Newman to safeguard the threads on Dreamwidth, and that he had no commercial purpose—are material to Newman's fair use defense, and he properly cited the exhibits to that end. *See* Doc. 17 pp. 6-7.

Exhibits S and T, the police report about Monsarrat's arrest and the *Wicked Local*

7

*Somerville* article based on that report, sparked the "Today's Somerville Police Blog" thread on LiveJournal that featured prominently in *Newman I*. *See* Exhibit A ¶ 43 & Exhibit C. That thread is also central to this action, as Monsarrat's allegedly infringed post and most of the allegedly defamatory comments first appeared there. Doc. 17 pp. 5, 13. So the exhibits provide pertinent context for the events that led to this action, and Newman cited them for that purpose. *Id.* p. 2.

Exhibit U is the letter Newman sent Monsarrat via undersigned counsel in 2013 that persuaded Monsarrat to dismiss *Newman I* with prejudice before Newman had to file an answer. *See* Exhibit F, Exhibit N. Along with Exhibits S and T, it shows that Newman's statements about *Newman I* in his December 2017 post (Exhibit L) were true. The letter also includes several representations material to Newman's fair use defense. *See* Doc. 18 pp. 14-15.

Exhibits E and F are the notice of dismissal and docket sheet from *Newman I*, which Monsarrat claims in a footnote "are immaterial." Doc. 21 p. 2 n.1. They are not; they reflect that he voluntarily dismissed the lawsuit with prejudice. Doc. 17 pp. 3, 13-14. Exhibit F also reflects that Monsarrat filed the *Newman I* complaint and exhibits on the public docket of the Superior Court almost eight years ago, and has never moved to seal them. That tends to contradict his assertions that filing the same complaint and three of its exhibits on the public docket in this action is offensive (and abusive, prejudicial, harmful, malicious, and improper). Doc. 21 pp. 8-9.

**II.    Monsarrat gives no valid basis to strike or seal any of the exhibits.**

Monsarrat moves to strike eighteen of Newman's exhibits as scandalous or impertinent, leaving only Exhibits P, Q, and R. In the alternative, he moves to have sixteen of the exhibits put under seal: all but Exhibit E, F, P, Q, and R. Doc. 21 p. 9. He fails to justify either request.

"[T]he presumption in favor of public access applies to all documents submitted to a court at the moment they come to the attention of a district judge." *United States ex rel. Wenzel v. Pfizer, Inc.*, 881 F. Supp. 2d 217, 221 (D. Mass. 2012) (*citing Standard Financial*, 830 F.2d at

409). "In the civil context, the plaintiff instigates the action, and, except in the most exceptional cases, must be prepared to proceed on the public record." *Doe v. Bell Atl. Bus. Sys. Servs., Inc.*, 162 F.R.D. 418, 422 (D. Mass. 1995).

Monsarrat bears the burden to overcome that presumption. Striking is a "drastic remedy … often sought by the movant simply as a dilatory or harassing tactic." *Manning v. Boston Med. Ctr. Corp.*, 725 F.3d 34, 59 (1st Cir. 2013) (*quoting* Wright § 1380 (3d ed. 2011)). "Sealing is disfavored as contrary to the presumption of public access to judicial records of civil proceedings. … It is justified only for compelling reasons and with careful balancing of competing interests." *Panse v. Shah*, 201 Fed. Appx. 3, 3 (1st Cir. 2006) (citations omitted). And in the "balancing of interests … the scales tilt decidedly toward transparency." *Nat'l Org. for Marriage v. McKee*, 649 F.3d 34, 70 (1st Cir. 2011). "'In order to override the common law right to access, the party seeking the closure … bears the burden of [showing] that the material is the kind of information that courts will protect' and that disclosure will work a clearly defined and serious injury to the party seeking closure.' In delineating the injury to be prevented, specificity is essential.'" *Gitto v. Worcester Telegram & Gazette, Corp. (In re Gitto Global Corp.)*, No. 05-cv-10334-DPW, 2005 U.S. Dist. LEXIS 7918, *35 (D. Mass. May 2, 2005) (*quoting In re Cendant Corp.*, 260 F.3d 183, 194 (3d Cir. 2001)).

Monsarrat fails to show that the exhibits are so scandalous, unrelated, and prejudicial as to justify sealing or striking them from the record. "'Scandalous' matter is that which improperly casts a derogatory light on someone. … It is not enough that the matter offends the sensibilities of the objecting party if the challenged allegations describe acts or events that are relevant to the action." *Id*. *28 n.9 (D. Mass. May 2, 2005) (*quoting* 5C Wright & Miller 3d § 1282 (2004)). "Discomfort, embarrassment, shame, and remorse do not rise to the level of scandalous or

defamatory" for purposes of a motion to seal. *In re Gitto/Global Corp.*, 321 B.R. 367, 376 (Bankr. D. Mass. 2005), *aff'd sub nom. Gitto v. Worcester Telegram & Gazette Corp.*, 422 F.3d 1 (1st Cir. 2005). "The mere fact that judicial records may reveal potentially embarrassing information is not in itself sufficient reason to block public access." *Siedle v. Putnam Inv., Inc.*, 137 F.3d 7, 10 (1st Cir. 1998). "To strike material as scandalous it must be obviously false and unrelated to the subject matter of the action." *Gateway Bottling, Inc. v. Dad's Rootbeer Co.*, 53 F.R.D. 585, 588 (W.D. Pa. 1971). Further, motions to strike "should not be granted … in the absence of a demonstration that the allegations attacked have no possible relation to the controversy and may prejudice the other party." *Gilbert v. Eli Lilly & Co., Inc.*, 56 F.R.D. 116, 121 (D.P.R. 1972).

### A.   The exhibits are all pertinent to Monsarrat's claims and Newman's defenses.

Though the exhibits are properly subject to judicial notice, Monsarrat does not want the Court to consider, or court records to include, the facts that underlie and defeat his claims. But the Court cannot decide the motion to dismiss without considering those adjudicative facts, no matter how scandalous Monsarrat finds them. He cites no valid basis to prevent Newman from showing the Court exactly what he stands accused of doing—republishing on Dreamwidth statements first posted on LiveJournal—in order to show that it does not give rise to liability.

Exhibits showing those facts are necessary to Newman's defenses and lethal to Monsarrat's claims. It is germane to Newman's Section 230 defense that third parties originally wrote and posted the allegedly defamatory statements, and each post from LiveJournal appeared on Dreamwidth only as part of the wholesale migration of the Davis Square community, because it shows that each post was "information provided by another content provider" within the meaning of 47 U.S.C. § 230(c)(1). *See* Doc. 17 pp. 12-20. And it is material to his fair use defense that the alleged infringement was a Dreamwidth republication of Monsarrat's 2013 post

on LiveJournal threatening Newman and others, because it shows that Newman's purpose in republishing was necessarily distinct and transformative. *Id.* pp. 5-12.

The thrust of Monsarrat's argument to place the exhibits under seal is that they include statements that "were part and parcel of his no-longer actionable 2013 cause of action"—that is, *Newman I*. Doc. 21 p. 1. While that raises questions about Monsarrat's decision to sue Newman once again, it does not render those statements so impertinent or unrelated to this action that the Court should strike. Monsarrat cites no precedent in which any court struck or sealed the allegedly infringing and infringed works and allegedly defamatory statements at issue in the complaint when the defendant provided them in response. As his cited cases instead recognize, "offensive material may not be purged from the record where it is relevant to the action." *Gauthier v. United States*, No. 4:10-cv-40116-FDS, 2011 U.S. Dist. LEXIS 99246, *33 (D. Mass. Sept. 2, 2011); *see* Doc. 21 p. 8 (*citing Gauthier*). Indeed, when a defendant's filings "accuse plaintiff of having a 'history of filing frivolous, abusive and vexatious lawsuits[,]' … [Even if] plaintiff's history of bringing frivolous lawsuits has very little, if any, relevance to the Court's determination of the merits of this complaint, the statements are not so immaterial or offensive as to warrant the Court's exercise of discretion to strike them." *Dore v. New Sensations, Inc.*, No. 13-10315-FDS, 2013 U.S. Dist. LEXIS 97551, *3 (D. Mass. July 12, 2013).

**B.      Monsarrat fails to show that the exhibits cause him prejudice.**

Motions to strike "are not typically granted without a showing of prejudice to the moving party." *Sheffield v. City of Boston*, 319 F.R.D. 52, 54 (D. Mass. 2016) (*citing* Wright & Miller § 1382 at 421-22 (3d ed. 2016)). And a "finding of good cause [to seal] must be based on a particular factual demonstration of potential harm, not on conclusory statements." *Anderson*, 805 F.2d at 7. Monsarrat does not meet that standard. He claims to be prejudiced by "the presence of [the exhibits'] scandalous allegations in the public record, and accessible over the internet[.]"

11

Doc. 21 pp. 8-9. He fails to show how. The allegedly defamatory statements have long been publicly available online, in court filings and elsewhere. Monsarrat does not show that their presence on the docket causes him any specific injury, above and beyond what he has claimed for more than a decade.

Two of the nine statements have been online since 2009, and six more since early 2010; the youngest appeared on LiveJournal in April 2013. *See* Doc. 17 p. 13. He alleges that all nine have been on Dreamwidth for nearly four years, since April 2017. Doc. 9 ¶ 20. Eight of them, as they appeared in the *Newman I* exhibits, have been publicly available on the *Zaiger* docket since at least February 13, 2018. *Zaiger* ECF Nos. 107-1 & 107-2. Monsarrat moved to strike or seal many exhibits in *Zaiger*, but not the ones that reproduced his *Newman I* exhibits. *See id.* ECF No. 46, 51, 104. Monsarrat filed those *Newman I* exhibits on the public docket of the Superior Court in early 2013 and has never moved to seal them. Exhibit F. He personally posted the "Violation" post reproduced at Exhibit G on LiveJournal in February 2010. And his publicly filed complaint included partial quotations from each allegedly defamatory statement. Doc. 9 ¶ 21.

Monsarrat offers no basis to conclude that his reputation will suffer because Newman's exhibits, also available on PACER, place those statements in context. He "has not articulated any specific basis on which sealing these records, after they have been publicly accessible for years, will remedy these hardships, particularly given that they will almost certainly remain available elsewhere on the Internet." *Furtado v. Chertoff*, No. 08-10491-LTS, 2018 U.S. Dist. LEXIS 210490, *2-3 (D. Mass. Nov. 26, 2018) (denying motion to seal). *See also Ark. Teacher Ret. Sys. v. State St. Bank & Trust Co.*, No. 11-10230-MLW, 2018 U.S. Dist. LEXIS 111322, *14 (D. Mass. June 28, 2018) ("discussion of a matter that is already public does not justify impoundment") (*citing United States v. Salemme*, 978 F. Supp. 364, 372-74 (D. Mass. 1997));

*ACLU v. Sibelius*, No. 09-cv-10038-RGS, 2011 U.S. Dist. LEXIS 115783, *4 (D. Mass. Oct. 6, 2011) (unsealing exhibits that "have been previously disclosed and are to some degree already in the public domain").

Even a showing of prejudice would not warrant the sweeping remedies Monsarrat seeks: striking eighteen or sealing sixteen of twenty-one exhibits in their entirety. "Courts must protect a party from the objectionable material in a manner that is narrowly tailored to comport most closely with the presumption of access." *Gitto*, 2005 U.S. Dist. LEXIS 7918, *34. Out of hundreds of pages of exhibits, he identifies at most twelve statements as allegedly defamatory. *See* Doc. 20 pp. 2-3 (*quoting* Doc. 9 ¶¶ 8, 21); Doc. 21 pp. 2-3. The remedies Monsarrat seeks are neither narrow nor tailored to his unsubstantiated concerns over those nine statements.

Rather than substantiate his claim of prejudice, Monsarrat recites his allegation (recycled from his futile proposed counterclaim in *Zaiger*) that an investment firm passed on financing his video game "due to the negative press you [Monsarrat] have received." Doc. 21 pp. 8-9 (citing Doc. 9 ¶ 28); *see Zaiger*, ECF No. 93-1 ¶ 58, ECF No. 105 ¶ 4, ECF No. 119 ¶ 4, & ECF No. 149 p. 19. That unsupported allegation does not show prejudice from the presence of Newman's exhibits on the docket, which is not "negative press." Anyone who accesses court filings via PACER or other legal websites has reason to expect them to present matters in dispute. "More often than not, statements in a court filing are disputed." *Gitto*, 422 F.3d at 12. Any speculation that some other potential business investors, unaware of Monsarrat's reputation, may pore over the court records and be deterred by allegedly defamatory statements in the exhibits (or in hyperlinks available within the exhibits) is too far-fetched to justify striking or sealing.

Newman did not file the exhibits for any improper purpose. Monsarrat alleged in *Newman I* that almost all of the statements at issue in this case were defamatory as originally

posted, but surrendered the case upon Newman's showing that he had failed to state a claim. Exhibits A, E, F, K, and U; Doc. 9 ¶ 12. Monsarrat's threats to pursue abuse claims over those statements are the basis of his copyright claim in this action. *See* Exhibits G and H. In order to relate his own story about being repeatedly threatened and sued over unfounded claims, Newman must present the statements that Monsarrat walked away from pursuing in June 2013.

### C. Newman's request for judicial notice complied with Local Rule 7.1(a)(2).

Newman complied with the requirements of Local Rule 7.1(a)(2) before filing the request for judicial notice. As his counsel certified: "on November 24, 2020, I sought to confer with Plaintiff's counsel Richard Goren in a good-faith attempt to resolve or narrow the issues in dispute in this request but have not reached resolution prior to filing." Doc. 18 p. 15. That certification accurately conveyed that Newman had sought Monsarrat's assent in good faith.

The pre-filing communications were even more extensive than the certification stated. The parties conferred through counsel via email on November 24 and 27, 2020. *See* Declaration of Dan Booth and Exhibit A hereto (a true and correct copy of counsel's late November email exchanges). Newman's counsel specified which materials he would offer for judicial notice, and his purpose: "so that the Court can review the underlying statements as originally published and on Dreamwidth in their full context." *Id.* Monsarrat's counsel expressed his disapproval of the request and proposed to confer only after the motion to dismiss was filed. *Id.* He further acknowledged that Newman's November 24, 2020 email had "stated LR7.1(a)(2) contentions." *Id.* So his aspersions of noncompliance and bad faith are spurious. Doc. 21 pp. 4, 6.

It is frivolous for Monsarrat to invoke the Court's authority to "sanction bad faith conduct" based on those aspersions. *Id.* p. 7. "Sanctions are unwarranted where conferral between the parties likely would not have resolved or narrowed the issues and plaintiff, in any event, would have opposed the motion." *Padmanabhan v. Healey*, 159 F. Supp. 3d 220, 226 (D. Mass. 2016),

14

*aff'd*, No. 16-1159, 2017 U.S. App. LEXIS 17027 (1st Cir. Jan. 4, 2017). Even a total failure to confer "prior to filing a motion certain to be opposed does not warrant so severe a sanction as summary denial." *Gerakaris v. Champagne*, 913 F. Supp. 646, 651 (D. Mass. 1996); *accord Tian v. Aspen Tech., Inc.*, 53 F. Supp. 3d 345, 359-60 (D. Mass. 2014). When the parties conferred, Monsarrat's counsel asserted that judicial notice "seems completely uncalled for," and that he could not "conceivably even begin to imagine" that the materials at issue could be "probative." Exhibit A hereto. Conferring further would have been futile.

## CONCLUSION

Therefore, and for the reasons more fully set forth in his request for judicial notice (Doc. 18), Ron Newman respectfully requests that the Court grant his request and deny Jonathan Monsarrat's motion to strike or seal (Doc. 21) in its entirety.

Dated: December 29, 2020                    /s/ Dan Booth
                                            Daniel G. Booth (BBO# 672090)
                                            DAN BOOTH LAW LLC
                                            121 Thoreau Street #121
                                            Concord, MA 01742
                                            (646) 573-6596
                                            dan@danboothlaw.com

                                            *Counsel for Defendant Ron Newman*

## CERTIFICATE OF SERVICE

I certify that the foregoing combined reply and opposition, and the Declaration of Dan Booth and Exhibit A in support thereof, filed on this date via the Court's ECF system, will thereby be served upon Plaintiff.

Dated: December 29, 2020                    /s/ Dan Booth