UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 20-10810-RGS

JONATHAN MONSARRAT

v.

RON NEWMAN

MEMORANDUM AND ORDER ON
DEFENDANT'S MOTION TO DISMISS

January 21, 2021

STEARNS, D.J.

Plaintiff Jonathan Monsarrat brings this action against Ron Newman, alleging copyright infringement and defamation. Newman moves to dismiss the case for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6). For the following reasons, the court will <u>ALLOW</u> defendant's motion.

## BACKGROUND

The essential facts, drawn from the First Amended Complaint (FAC) (Dkt # 9) and the material documents incorporated by reference,[1] as viewed

---

[1] Monsarrat moves to strike or seal the exhibits that Newman offers with his motion to dismiss. *See* Pl.'s Opp'n to Req. for Jud. Notice and Mot. to Strike (Dkt # 21). While the court is not convinced that the documents excerpted from Monsarrat's 2013 and 2017 lawsuits have any material bearing on its resolution of the instant motion, the court declines to strike or seal these documents because they are matters of public record and are incorporated by reference in the FAC. *See* FAC ¶¶ 11-12, 14, 26, 29-31. The

in the light most favorable to the plaintiff as the nonmoving party, are as follows. On April 4, 2017, the social networking site LiveJournal revised its terms and conditions of service to comply with Russian law. Because Russian law permitted censorship of certain content, Newman, the moderator of a Davis Square (Somerville, MA)-specific LiveJournal community, decided to move the group to Dreamwidth, a social networking site that was not subject to Russian censorship. On April 30, 2017, Newman copied every post from the Davis Square LiveJournal community to Dreamwidth. Monsarrat filed suit in this court on April 28, 2020, asserting claims of copyright infringement and defamation related to the republication of these posts. Newman moved to dismiss on December 14, 2020.

## DISCUSSION

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), quoting *Bell Atl. Corp.*

---

court also declines to strike or seal the Wikipedia entries for LiveJournal and or Dreamwidth, both of which are directly cited by the FAC. *See id.* ¶¶ 7, 18. Finally, the court declines to strike or seal the Dreamwidth post reproductions or the original copyrighted LiveJournal post. The FAC refers to these posts in several paragraphs, *see id.* ¶¶ 8, 10, 16, 20-21, 45-46, and Monsarrat concedes in his opposition that they form the basis of (and thus are necessary to a proper evaluation of) his claims, *see* Pl.'s Opp'n to Def.'s Mot. to Dismiss at 8, 10, 16 (Dkt # 20).

*v. Twombly*, 550 U.S. 544, 570 (2007).  Two basic principles guide the court's analysis.  "First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Id.* "Second, only a complaint that states a plausible claim for relief survives a motion to dismiss."  *Id.* at 679.  A claim is facially plausible if its factual content "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678.

### a. Copyright Infringement

Monsarrat raises a copyright infringement claim against Newman involving the republication of a comment he originally posted in the Davis Square LiveJournal community in 2010, reproduced below.



**Violation of LiveJournal abuse policies**
make_you_laugh
February 6 2010, 21:03:40 UTC

LiveJournal's abuse policies are at http://www.livejournal.com/abuse/policy.bml

Under the section "Harassment", it says that "If a user makes a statement which encourages or incites others to harass another person in any way, access to that content will be disabled. This can also extend to entries in which harassment has not been explicitly called for, but is implied, at the discretion of the Abuse Prevention Team."

This is it. I'll give everyone here until Monday at 12pm to remove your comments from this board. At that point, I'm collecting every single one of them. I have already filed an abuse report with LiveJournal but won't call them until Monday at 12pm.

Ex. G to Def.'s Mot. to Dismiss at 2; *see also* FAC ¶ 45.  Monsarrat asserts that Newman's reproduction of this post on Dreamwidth in 2017 infringed his intellectual property rights and entitles him to damages.  Newman

contends that Monsarrat has failed to state an actionable claim because the allegations in the FAC establish his entitlement to a fair use defense.

"Fair use 'creates a privilege for others to use the copyrighted material in a reasonable manner despite the lack of the owner's consent.'" *Soc'y of Holy Transfiguration Monastery, Inc. v. Gregory*, 689 F.3d 29, 59 (1st Cir. 2012), quoting *Weissmann v. Freeman*, 868 F.2d 1313, 1323 (2d Cir. 1989). The Copyright Act codifies four non-exclusive factors relevant to the fair use inquiry:

> (1) the purpose and character of the use, including whether such use is of a commercial nature or is for nonprofit educational purposes;
>
> (2) the nature of the copyrighted work;
>
> (3) the amount and substantiality of the portion used in relation to the copyrighted work as a whole; and
>
> (4) the effect of the use upon the potential market for or value of the copyrighted work.

17 U.S.C. § 107.

Here, drawing all reasonable inferences in Monsarrat's favor, the court agrees that the FAC establishes Newman's entitlement to a fair use defense as a matter of law. As to the first factor, it is clear from the face of the FAC (and from the plain text of the post and its reproduction, *see* Exs. G and H to Def.'s Mot. to Dismiss; *see also* FAC ¶¶ 45-46), that Newman did not publish

the copyrighted post for the same purposes for which Monsarrat initially created it. *See Gregory*, 689 F.3d at 59-60 (considering as part of the first factor "whether and to what extent the new work is transformative, that is, whether the new work merely supersedes the objects of the original creation or whether it adds something new, with a further purpose or different character, altering the first with new expression, meaning, or message" (internal quotation marks omitted)), quoting *Campbell v. Acuff-Rose Music, Inc.*, 510 U.S. 569, 579 (1994). Monsarrat submitted the original post to highlight LiveJournal's harassment policy and demand deletion of other posts on the community website which he viewed as violative. The Dreamwidth reproduction, on the other hand, was created solely for historical and preservationist purposes. *See Bill Graham Archives v. Dorling Kindersley Ltd.*, 448 F.3d 605, 609 (2d Cir. 2006) (finding that the use of concert posters in a book on the history of the Grateful Dead served a different purpose than the original purpose of "artistic expression and promotion" because defendant used the concert posters "as historical artifacts to document and represent the actual occurrence of Grateful Dead concert events"); *Stern v. Does*, 978 F. Supp. 2d 1031, 1045 (C.D. Cal. 2011), *aff'd on other grounds sub nom. Stern v. Weinstein*, 512 F. App'x 701 (9th Cir. 2013) (finding that defendants' forwarding by email of a copyrighted

5

post "conveyed the fact of the post rather than its underlying message" and "thus had a substantially different purpose than the post itself"); *cf. Kelly v. Arriba Soft Corp.*, 336 F.3d 811, 819 (9th Cir. 2003) (finding that the use of artistic images in thumbnail form "serve[d] a different function" than "artistic expression" because the thumbnails were simply meant to "improv[e] access to information on the internet"). Monsarrat's post, moreover, was just one of several hundred posts copied by Newman and was not used to promote traffic to the new website.[2] *See Harper & Row Publishers, Inc. v. Nation Enters.*, 471 U.S. 539, 562 (1985) (noting that "[t]he crux" of the analysis is "whether the user stands to profit from exploitation of the copyrighted material without paying the customary price"); *cf. Haberman v. Hustler Mag., Inc.*, 626 F. Supp. 201, 211 (D. Mass. 1986) (finding that the first factor did not militate strongly against fair use where a magazine reproducing plaintiff's postcards "did not exploit the value of [his] works in order to sell copies of its magazine" but instead reproduced the works "as items inside the magazine in a regular feature section").

---

[2] Posts on Dreamwidth in 2017 may have included references to the reproduced post (and may have even hyperlinked to it), but there is no allegation that the post itself was used to promote traffic to the Dreamwidth community.

Turning to the second factor, the "nature of the copyrighted work," the balance again tips in Newman's favor. The post largely repeats the LiveJournal harassment policy, a factual matter, and the court cannot reasonably infer under these circumstances that the warning in the final paragraph, for contributors to delete their posts in light of this policy, transformed otherwise factual matter into "a creative work enjoying broader copyright protection." *See Nunez v. Caribbean Int'l News Corp.*, 235 F.3d 18, 23 (1st Cir. 2000). In any event, the post was published on a public forum, so the "right of first publication" is not implicated. *See id.*

The third factor, "the amount and substantiality of the portion used in relation to the copyrighted work as a whole," "focus[es] upon whether the extent of . . . copying is consistent with or more than necessary to further the purpose and character of the use." *Id.* at 24 (internal quotation marks and citations omitted); *see also Haberman*, 626 F. Supp. at 212 ("[I]t has long been recognized that a commentator may fairly reproduce as much of the original, copyrighted work as is necessary to his proper purpose."). This factor is neutral. Newman copied Monsarrat's post in full, but a full reproduction is consistent with historical and preservationist purposes.

Finally, the fourth factor, "the effect of the use upon the potential market for or value of the copyrighted work" – "the single most important

7

element of fair use," *Harper & Row*, 471 U.S. at 566 – weighs against Monsarrat. There is no plausible market for the copyrighted post and thus no likelih0od that Newman's reproduction could have any harmful market consequences. *See Gregory*, 689 F.3d at 64 (noting that the fourth factor requires the court "to consider both (1) the degree of market harm caused by the alleged infringer's actions, and (2) 'whether unrestricted and widespread conduct of the sort engaged in by the defendant . . . would result in a substantially adverse impact on the potential market for the original'" (alterations in original)), quoting *Campbell*, 510 U.S. at 590.

In sum, because it is clear from the face of the FAC that three out of the four fair use factors favor Newman and that the remaining factor can at best be deemed neutral, the court finds Newman entitled to the fair use defense as a matter of law. It accordingly allows the motion to dismiss the copyright infringement claim.

### b. Defamation

Monsarrat also raises a defamation claim against Newman based on his republication of certain posts from the Davis Square LiveJournal community on Dreamwidth. Newman argues that the Communications Decency Act (CDA), 47 U.S.C. § 230, bars this claim.

Section 230 of the CDA provides, in relevant part, that "[n]o provider or user of an interactive computer service shall be treated as the publisher or speaker of any information provided by another information content provider" and that "[n]o cause of action may be brought and no liability may be imposed under any State or local law that is inconsistent with this section." §§ 230(c)(1), 230(e)(3).  Because immunity under Section 230 is an affirmative defense for which Newman bears the burden of proof, the court may only grant his motion to dismiss if his entitlement to the defense is apparent from the face of the FAC.  *See Small Justice LLC v. Xcentric Ventures LLC*, 873 F.3d 313, 322 (1st Cir. 2017).  In other words, the factual allegations in the FAC must definitively establish that (1) Newman "is a 'provider or user of an interactive computer service'; (2) the claim is based on 'information provided by another information content provider'; and (3) the claim would treat [Newman] 'as the publisher or speaker' of that information."  *See Universal Commc'n Sys., Inc. v. Lycos, Inc.*, 478 F.3d 413, 418 (1st Cir. 2007).

The FAC pleads that Newman is a user of an interactive computer service,[3] *see* FAC ¶¶ 18, 20, and the defamation claim indisputably seeks to

---

[3] Monsarrat implies that qualification as a provider or user of an interactive computer service is inconsistent with qualification as an information content provider.  *See* Pl.'s Opp'n to Def.'s Mot. to Dismiss at 8.

9

treat Newman as the publisher of the cited statements. Newman's entitlement to immunity thus hinges on whether the complaint establishes that he acted as an information content provider with respect to the dissemination of the allegedly defamatory statements.

An "information content provider" is "any person or entity that is responsible, in whole or in part, for the creation or development of information provided through the Internet or any other interactive computer service." 47 U.S.C. § 230(f)(3). Here, Monsarrat fails to plausibly allege that Newman participated in the creation or development of the allegedly defamatory statements. Indeed, in his opposition, he concedes that "Newman did not originally compose or write any of the original defamatory statements" but instead merely "copie[d] . . . defamatory statements published many years ago." Pl.'s Opp'n to Def.'s Mot. to Dismiss at 11; *see also* FAC ¶¶ 8, 10, 16, 20-21. His argument for liability relies on Newman having taken "ownership of the collection of defamatory speech" by republishing the statements on "an entirely different website." *See* FAC ¶ 23;

---

But these are separate inquiries. Nothing prevents a provider or user of an interactive computer service from also serving as an information content provider with respect to certain statements. *See, e.g., Carafano v. Metrosplash.com, Inc.*, 339 F.3d 1119, 1125 (9th Cir. 2003). The CDA merely states that the provider or user of an interactive computer service is not entitled to immunity if it acts as an information content provider.

10

*see also* Pl.'s Opp'n to Def.'s Mot. to Dismiss at 11 ("In his 2017 post on the Dreamwidth website it was Newman alone who voluntarily provided the content, *i.e.*, a compilation of copies of those defamatory statements published many years ago."). But this is no basis on which the court can impose liability.[4] As another session of this court recently observed, "[r]epublishing an already-existing user-submitted comment, without altering the content of that comment, does not materially contribute to its allegedly defamatory nature." *See Ayyadurai v. Floor64, Inc.*, 270 F. Supp. 3d 343, 368 (D. Mass. 2017); *see also Kimzey v. Yelp! Inc.*, 836 F.3d 1263, 1268 (9th Cir. 2016) (granting a motion to dismiss where "[a] careful reading of the complaint reveals that Kimzey never specifically alleged that Yelp authored or created the content of the statements posted under the aegis of Sarah K, but rather that Yelp adopted them from another website and transformed them into its own stylized promotions on Yelp and Google"); *Jones v. Dirty World Entm't Recordings LLC*, 755 F.3d 398, 415-417 (6th Cir. 2014) (finding that a website operator did not become an information content provider of allegedly defamatory statements provided by third parties merely by publishing those statements on his website). The court

---

[4] That the posts remained accessible on LiveJournal has no bearing on the court's analysis.

11

accordingly allows the motion to dismiss Monsarrat's defamation claim under the CDA.

## ORDER

For the foregoing reasons, the motion to dismiss is <u>ALLOWED</u>. The Clerk will enter judgment for defendant Newman and close the case.

                SO ORDERED.

                <u>/s/ Richard G. Stearns</u>_____
                UNITED STATES DISTRICT JUDGE