UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| JONATHAN MONSARRAT, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 20-cv-10810-RGS |
| v. | ) | |
| RON NEWMAN, | ) | **OPPOSITION TO DEFENDANT'S** |
| Defendant. | ) | **MOTION FOR ATTORNEY'S FEES** |
| | ) | |

I.  **INTRODUCTION AND SUMMARY**

Given the totality of the circumstances of this case in the exercise of its broad discretion the Court should not award fees to the defendant Ron Newman ("Newman") for prevailing on the plaintiff Jonathan Monsarrat's ("Monsarrat") copyright infringement claim. The prima facie infringement claim was brought in good faith, with no improper motivation and with no objective unreasonableness in either its factual or legal components. Newman sought, and obtained, dismissal of the fee shifting determinant copyright claim[1] predicated on his un-pleaded affirmative defense of fair use without factual or legal challenge to Monsarrat's prima facie presentation of his copyright claim. Monsarrat's contentions in opposition, while implicitly rejected by the Court, were neither unreasonable nor frivolous.

Monsarrat brought his copyright claim motivated to exercise his exclusive right under his

---

[1] While the dismissal of the common law, pendent jurisdiction claim is not a trigger for fee shifting under 28 U.S.C.§ 505, the defamation claim presented a case of first impression and was not objectively unreasonable. In *Ayyadurai v. Floor64, Inc.*, 270 F. Supp. 3d 343 (D. Mass. 2017) between September 2014 and November 2016 the Techdirt website published 14 articles about the plaintiff Ayyadurai one of which was written by the defendant Beadon which "consisted primarily of re-posted comments submitted by readers in response to other articles on Techdirt along with some commentary by Beadon." *Id*. at 351. Ayyadurai sued Beadon for defamation seeking to hold him liable for "content created by third-party users" and posted on the Techdirt website and not for Beadon's "minor editorializing comments" on the allegedly defamatory statements. *Id.* at 367. The Court granted Beadon's motion to dismiss under Section 230. *Id.* at 368. In this case the Court held that Newman's republication on an entirely different website was immune under Section 230.

copyright to prevent Newman's unauthorized reproduction on a completely separate website, aimed at a whole new audience of consumers of the defamatory materials.

Neither the purposes of the Copyright Act nor the First Amendment's protection of free speech would be furthered by awarding Newman fees. The Court should also consider that Newman's fee application includes improper contentions, unsupported by the rule 12(b)(6) record, and also mischaracterizations of purportedly applicable law.

## II.   BACKGROUND AND PROCEDURAL HISTORY.

More than ten years ago on the LiveJournal website a number of largely anonymous users posted comments in a discussion group falsely accusing Monsarrat, another user of that website, of despicable crimes, including being a pedophile and a sexual predator of young women. FAC ¶¶ 8-9. Newman, as user on the LiveJournal website, posted editorial like comments as a moderator of the discussion group concerning this smear attack on Monsarrat. FAC ¶ 20. In 2013 Monsarrat unsuccessfully sued the anonymous defamers and Newman in Massachusetts state court. FAC ¶¶ 11-12.

In April 2017 the Russian based LiveJournal website changed its terms of service including adding certain restrictions on the anonymity of its users and as to content. FAC ¶ 7. The Dreamwidth website is a materially different internet platform aimed at a fundamentally different audience. FAC ¶ 19.

At the end of April 2017, Newman made copies of each and every one of the so-called discussion threads on the LiveJournal website, including the then no-longer actionable individual false and defamatory statements originally published by various anonymous persons on the LiveJournal website. FAC ¶ 22. The threads that Newman copied included Monsarrat's registered copyrighted work. Newman then republished on the separate Dreamwidth website the

copies he had made of the entire LiveJournal thread including the defamatory statements and the reproduction of Monsarrat's copyright. FAC ¶¶ 45-46.

To this very day the LiveJournal website including the original anonymously published defamatory statements remain accessible on the internet. FAC ¶17. See note 2 *infra*.

In March 2020, Monsarrat's counsel wrote to Newman complaining that on or about April 30, 2017 Newman had "individually republished"[2] on the fundamentally different Dreamwidth website the "collection of defamation" that had been originally published years before by a number of anonymous users of the LiveJournal website. In his letter Monsarrat alleged that Newman intended his individual posting on the Dreamwidth website to be specific statements of fact reasonably understood by the different Dreamwidth audience and those search engine users, with the more recent time stamp, to be specific factual statements that as of April 30, 2017 Monsarrat is a pedophile, a sexual predator of young girls. Monsarrat explained that unless Newman agreed to a takedown of the false and defamatory statements he "will file an action and in addition to damages will seek an injunction enjoining you from future re-publication of your same libel." (emphasis original). By his counsel Newman responded and did not dispute either the defamatory nature of the specific factual statements or the harm continuing from a refusal to take down any of the defamatory statements. Instead, Newman's counsel contended that his "website migration" was not actionable insisting that he was entitled to immunity under Section 230 when the alleged libel was "republished on Dreamwidth." The initial letter and response are exhibits A and B to the affidavit of counsel, Richard A. Goren,

---

[2] Newman incorrectly informs the Court that in his demand Monsarrat had "contend[ed] that moving the forum posts constituted republication." Doc. 34 at 3 (emphasis added). See exhibit A, Goren Aff. It is undisputed the original posts have never been moved and still remain on the LiveJournal website.

("Goren Aff.") filed herewith.

   A. *Relevant Procedural background.*

In the operative verified amended complaint, Doc. 9, ("FAC"), Monsarrat sued for both defamation and copyright infringement. The FAC alleged defamation with specific particularity: (i) the precise words of the defamatory statements, including but not limited to that Monsarrat is a "child molester" and "sexual predator;" (ii) the means of Newman's republication, on the Dreamwidth website; and (iii) the approximate dates, on or shortly after April 30, 2017, of Newman's republication on the entirely different platform aimed at a new and different audience. FAC ¶ ¶16-22. As to copyright infringement the FAC alleged: Monsarrat's authorship, and his August 2012 registration of ownership, of that work; Newman's unauthorized reproduction of that work on and after April 30, 2017 as an integral part of Newman's campaign to defame Monsarrat. FAC ¶45, ¶46, ¶1. To redress Newman's prima facie infringement and eschewing any claim of actual economic harm from the alleged infringement, Monsarrat requested the Court's assessment of statutory damages under 17 U.S.C. §504(c). FAC ¶48 and Prayer for Relief.

On January 21, 2021, the Court granted Newman's motion to dismiss. Doc. 30. On the basis of the affirmative defense of the fair use doctrine, the elements of which the Court ruled were "clear from the face of the FAC," the Court dismissed the copyright infringement claim. In a case of first impression the Court dismissed the "defamation claim against Newman based on his republication of certain posts from the Davis Square LiveJournal community on Dreamwidth" as barred by Section 230 of the Communications Decency Act, 47 U.S.C. §230 noting the fact that the defamatory "posts remain[] accessible on the LiveJournal [website] has no bearing…". Doc. 30 at 8-12, 11 n.4. Judgment dismissing Monsarrat's FAC entered on January 21, 2021. Doc. 31.

4

On February 4, 2021 Newman filed a motion under Rule 54(d) and 47 U.S.C. §505 for an award of attorney's fees and costs for having prevailed on his defense of the copyright infringement claim. Docs. 33-35.

### III.    ARGUMENT.

A. Legal Standard.

Under 17 U.S.C. § 505 and as guided by both *Kirtsaeng v. John Wiley & Sons, Inc.*, 136 S. Ct. 1979, 1985 (2016) and First Circuit precedent in deciding whether to fee shift to a party prevailing on a copyright infringement claim this Court has "wide latitude…based on the totality of circumstances in a case."  The First Circuit instructs that in exercising this broad discretion and "deciding whether to fee-shift, [district courts] must take into account a range of considerations beyond the reasonableness of litigating positions." *Small Justice LLC v. Xcentric Ventures LLC*, 873 F.3d 313, 328 (1st Cir. 2017). And "in any given case a court may...deny fees even though the losing party made unreasonable [arguments]." *Mallon v. Marshall*, 268 F. Supp. 3d 264, 266 (D. Mass. 2017) (citations omitted).  "[A]lthough objective reasonableness carries significant weight, courts must view all the circumstances of a case on their own terms, in light of the Copyright Act's essential goals." *Id*. See also *Airframe Systems v. L-3 Communications*, 658 F.3d 100, 108-09 (1st Cir. 2011) (affirming denial of an award of fees to prevailing defendant) ("We have interpreted *Fogerty* as allowing an award of attorney's fees to a prevailing party if the opposing party's claims are "objectively quite weak.") .

B. *The Copyright Claim was not objectionably unreasonable.*

1. <u>On the Rule 12(b)(6) record the copyright claim was not objectively unreasonable; as a matter of law the verified amended complaint stated a prima facie case of infringement.</u>

The verified Amended Complaint plausibly stated a cause of action of copyright infringement. *Johnson v. Gordon*, 409 F.3d 12, 17 (1st Cir. 2005). First it specifies ownership of a presumptively valid copyright by alleging that Monsarrat is both the author of a certain copyrighted work and the registered owner of that work holding a US Copyright Office Registration No. TXu001823219 dated August 16, 2012 for that work. See 17 U.S.C. §410 (c).[3] Second, the FAC alleges that on or about April 30, 2017, Newman reproduced and published on the Dreamwidth website Monsarrat's work as integral part of Newman's defamatory statements falsely accusing Monsarrat of despicable crimes. (FAC ¶45, ¶46, ¶1).

In moving to dismiss the copyright claim on the doctrine of fair use Newman did not contest any of the factual or legal components of Monsarrat's prima facie case.

2. <u>Monsarrat's position and fair use contentions were not objectively unreasonable and unquestionably not frivolous.</u>

While on this Rule 12(b)(6) record the Court held that as a matter of law the "FAC establishes Newman's entitlement to a fair use defense," Doc. 30 at 4, Monsarrat's contentions and legal arguments were reasonable.

No sworn facts were presented relative to Newman's motivations or his intent, in copying the presumptively valid Monsarrat copyright. It was not unreasonable for Monsarrat to argue—

---

[3] While the Amended Complaint does not specify precisely when the work was first published, contextually it is clear, indeed as Newman points out (Doc. 17 at 5), the August 16, 2012 registration was some two years after Monsarrat's initial 2010 publication on the LiveJournal website and in all events well within the five-year statutory period requisite for presumptive validity.

consistent with Supreme Court precedent—that Newman was required to put on evidence of his motivations and intent to satisfy his defense of fair use. See Doc. 20 at 14-15.

While the Court found that Newman's reproduction "was created solely for historical and preservationist purposes," and that the extent of Newman's "reproduction…[was] consistent with historical and preservationist purposes," Doc. 30 at 5 and 7, Monsarrat's position on the so-called transformative factor was reasonable and unquestionably not frivolous.

Newman contended his reproduction on the Dreamwidth website of the entire copyrighted work was transformative because it "was necessary to…[his] historical, preservationist purposes." Doc. 17 at 10. But again, Newman produced no sworn evidence of his intended purpose or purposes.  And, on this 12(b)(6) record it is undisputed the original thread of 526 comments—including the 2010 original first publication of Monsarrat's copyright—still remains on the LiveJournal website. FAC¶17.[4]  While implicitly rejected by the Court, Monsarrat's position that copying an entire work, standing alone, is not a transformative use is fairly supported by *Soc'y of the Holy Transfiguration Monastery, Inc. v. Archbishop Gregory,* 689 F. 3d 29, 60 (1st Cir. 2012) and cited in his opposition to the motion to dismiss. Doc. 20 at 17.

As "to the second factor, the 'nature of the copyrighted work,' [the Court's found that] the balance tips in Newman's favor." Doc. 30 at 7.   But Monsarrat's position, Doc. 20 at 14-15,

---

[4]  We note that unlike the Dreamwidth website the LiveJournal website is backed up to the Internet Archive, aka The Wayback Machine. See https://web.archive.org/web/2018*/https://davis-square.livejournal.com/2101375.html indicating that the specific post with comments on LiveJournal website post with comments,  **https:/davis-square.livejournal.com/2101375.html**  was copied, archived and preserved 8 times between April 30, 2013 and March 6, 2018.

that on the 12(b)(6) record it was premature to make a finding of this factor, is supported by his cited precedent and is not unreasonable.

The Court found the third factor neutral noting that "a full reproduction is consistent with historical and preservationist purposes." Doc. 30 at 7.

Citing *Soc'y of the Holy Transfiguration Monastery, Inc. v. Archbishop Gregory,* 689 F. 3d 29, 64 (1st Cir. 2012) the Court found the fourth factor weighed against Monsarrat because "[t]here is no plausible market for the copyrighted post and thus no likelihood that Newman's reproduction could have any harmful market consequences." Doc. 30 at 8.

Monsarrat's contention that this fourth factor "cannot be reduced to strictly monetary terms," and the value to him of the exclusive right to control and restrict the reproduction of his work independent of any potential market value (Doc. 20 at 18, citing *Holy Transfiguration,* 689 F. 3d at 64) is reasonable.

Finally, while on the Rule 12(b)(6) record the Court determined fair use as a matter of law, Monsarrat's contention (Doc. at 18-19) that under Supreme Court and First Circuit precedent the adjudication of fair use defense requires the fact finder's assessment of "the propriety of…[Newman's] conduct" and whether in equity Newman has acted in good faith is supported by applicable law and is reasonable.

C. Motivation and Good Faith.

1. <u>In contending he is entitled to an award of fees Newman improperly contravenes the law of the case and fundamental copyright principles; Monsarrat has a fundamental right to preclude unauthorized reproduction of his work; that there is no economic value to the work is immaterial.</u>

While subject to affirmative defenses such as fair use, on the Rule 12(b)(6) record that was before the Court, Monsarrat's copyright is presumptively valid.[5] That as Newman posits in his fee application "[t]here is no plausible market for the copyrighted post," Doc. 34 at 7, is immaterial. Newman's fee application contentions assailing the copyrightability of Monsarrat's work (see e.g., *id.* at 7 ("lacking even the minimal quantum of creativity required for copyright")), contravene both the law of the case and fundamental copyright law.

Monsarrat has a longstanding fundamental property right, indeed under the Copyright Act the sole and exclusive right, to preclude Newman from reproducing the post. 17 U.S.C. § 106(1). See *Folsom v. Marsh*, 9 F. Cas. 342 (Circuit Court, D. Mass. 1841), 1841 US App. LEXIS 468. Whether or not

> "susceptible of being literary," and "whether…[Monsarrat's post is a] literary composition[]⁶,… or details…facts, or [is a] letter[] of business…the general property in the…[post] remains in [Monsarrat as] the writer" as well as the general copyright… The Copyright act…gives…the author…the sole right to print and publish the same…[and to preclude by Court order] the publication thereof, by any person or persons, without his consent…Even in compositions confessedly literary, the author may not intend, nay, often does not intend them for publication; and yet, no one on that account doubts his right of property therein as a subject of value to himself and to his posterity.

*Id*. at **8, 9. As Justice Story held in this seminal fair use case

> [t]he author of any letter or letters, (and his representatives,) whether they are literary compositions, or familiar letters, or letters of business, possess the sole and exclusive copyright therein; and that no persons, neither those to whom they are addressed, nor other persons, have any right or authority to publish the same upon their own account, or for their own benefit.

*Id*. at 9.

---

[5]     Monsarrat's August 2012 registration being "within five years after first publication of the work shall constitute prima facie evidence of the validity of the copyright and of the facts stated in the certificate." 17 U.S.C. §410 (c).

[6]     As Justice Story adds that "[i]n one sense, all letters are literary, for they consist of the thoughts and language of the writer reduced to written characters, and show his style and his mode of constructing sentences, and his habits of composition." *Id*. at **7, 8.

The lack of market value for Monsarrat's copyrighted work is immaterial to his prima facie infringement case. See, e.g., *Contemporary Arts, Inc.* v. *F. W. Woolworth Co,* 93 F. Supp. 739, 743 (D. Mass. 1950) ("The question of artistic merit or value has no bearing upon the rights of the parties").

The Rule 12(b)(6) record established Monsarrat's ownership of a presumptively valid copyright. The fundamental property right to limit or prevent third parties from reproducing Monsarrat's "thoughts and language…reduced to [a mere few paragraphs of] written characters" is one of the exclusive rights of copyright ownership. *Folsom v. Marsh*, 9 F. Cas. at **7, 8; 17 U.S.C. §106(1). As a matter of law the lack of any commercial or market value to his copyright is immaterial to his prima facie infringement claim.

Monsarrat also has a fundamental right to seek redress for republication of libelous statements accusing him of despicable crimes. When Newman refused to effect a takedown of the libel Monsarrat sued for copyright infringement and defamation contending the unauthorized copyright infringement was an integral part of Newman's campaign to defame him. Motivations to preserve both his property rights and to seek redress for speech unprotected by the First Amendment are unquestionably proper. That the Court dismissed the copyright claim on the un-pleaded fair use affirmative defense does not transmogrify Monsarrat's good faith and legitimate justifications for bringing either the determinant copyright claim or the defamation claim.

D. Other Considerations.

1. In the exercise of its discretion the Court should consider Newman's litigation conduct, specifically his improper contentions, arguments and misapplied citations of law.

(a) Newman's mischaracterization of facts. While the 12(b)(6) record establishes the LiveJournal website exists entirely apart from the Dreamwidth website, assailing Monsarrat's good faith Newman misleadingly contends he was improperly "dragged…into federal court"

10

over what Newman alternatively characterizes as a "routine 2017 website data transfer" (Doc. 34 at 1), "the migration of the website content to a new host" (*id*. at3) or a "changing the forum's web host service" (*id*. at 13).

While the Court dismissed the defamation claim it is undisputed Newman made copies of the content on the LiveJournal website and reposted the content at issue on the separate Dreamwidth website. None of the LiveJournal content was "migrated" and to this day remains on the LiveJournal website.

It is materially misleading to suggest this was a case where the owner/operator of a website migrates its content to a new host.[7] This is not a case where for example the Boston Globe owns a website https://www.bostonglobe.com/ hypothetically hosted by one web hosting service and decides to move its site to another website hosting business, say GoDaddy to secure different terms or services for its users.

(b) <u>Contrary to Newman's unsupported contentions, Doc. 34 at 8-12, the copyright claim was neither frivolous nor brought in bad faith; Newman mischaracterizes the FAC and misapplies applicable law.</u>

The FAC plausibly alleged a prima facie case of copyright infringement: (i) ownership of a presumptively valid copyright; and (ii) Newman's unauthorized reproduction of Monsarrat's copyrighted work. Newman sought, and obtained dismissal, on the basis of the fair use doctrine. There is no basis in the record to contend the so-dismissed prima facie infringement claim was brought in bad faith. Contrary to Newman's procedurally improper contention, Doc. 34 at 8,

---

<sup>7</sup> According to Wikipedia, https://en.wikipedia.org/wiki/Web_hosting_service, "A **web hosting service** (often shortened to **web host**) is a type of Internet hosting service that allows individuals and organizations to make their website accessible via the World Wide Web."

Monsarrat had no duty to prophylactically allege in his FAC facts to support a potential defense to an un-pleaded fair use affirmative defense.

Nor did Monsarrat file his action in federal court, the exclusive permitted venue for copyright infringement claims, as Newman falsely portrays in a "ruse" to improperly sidestep the Massachusetts "heightened pleading [with particularity] standard for defamation." Doc. 34 at 9, 15.  The FAC pleaded the defamation claim with the specificity requisite in the Massachusetts Superior Court. See, e.g., *Dorn v. Astra USA*, 975 F. Supp. 388, 396 (D. Mass. 1997).  The FAC alleged: the general tenor of the libel, falsely accusing Monsarrat of one or more crimes exposing him to public contempt and disgrace; the precise wording of several defamatory sentences; the means of the publication on the Dreamwidth website; and, the dates of Newman's republication, on and after April 30, 2017.  FAC ¶¶16, 20-25, 38-43.[8]

(c)     <u>Newman asks the Court to make an award of fees based on his misleadingly characterized outcome of another case in a different session of this Court.</u>

Newman misleads the Court by contending it should consider in the prior Zaiger[9] case that Monsarrat had "evade[d] an award of attorney's fees under the Copyright Act to the prevailing defendant [Zaiger]." Doc. 34 at 19.  While the copyright infringement claim was dismissed as untimely the Court denied Zaiger's motion for fees determining that "the suit was not frivolous,…[Monsarrat] had a good-faith motive to bring it [and had made] objectively reasonable… arguments." CA 17-10356-PBS, Doc. 124 at 1.  And the Court also explained there was a question of whether Zaiger's "fees motion is timely since the Court has yet to rule on

---

[8] So too contrary to Newman's misleading mischaracterization of the operative complaint, (Doc. 34 at 16, 16 n.5) the  FAC only sought to hold Newman liable for what he republished on Dreamwidth. See Goren Aff. ¶3.

[9] Nor, contrary to Newman's cavil (Doc. 34 at 9-10) did Monsarrat engage in judge shopping by designating on the civil action cover sheet, CA 17-10356-PBS, Doc. 1-1, the Zaiger case as a related case in accordance with the then applicable LR 40.1(g).

Defendant's [Zaiger] counterclaim [for alleged misrepresentation of copyright claims under 17 U.S.C.§512 (f)]." *Id*.  In fact upon entry of judgment in the Zaiger case Monsarrat was a prevailing party under the Copyright Act. CA 17-10356-PBS, Doc. 151.

  (d) <u>Misapprehending fundamental copyright law Newman contends "Monsarrat had no legitimate copyright purpose for his copyright claim" and that the infringement claim was brought in bad faith. (Doc. 34. at 10-12).</u>

Rather than trying to "facilitate publication of" his copyrighted work, according to Newman, the fact that Monsarrat "sought to use the copyright law to prevent…[its] dissemination" is conclusive of Monsarrat's improper purpose. *Id*. at 10.   This of course is fundamentally incorrect. One of the exclusive rights of copyright ownership is to preclude third parties from publishing.

While on this 12(b)(6) record Monsarrat is the duly registered owner of a presumptively valid copyright, Newman improperly asks the Court to find that in 2012 Monsarrat had an improper purpose to register his copyright. *Id.* at 11-12.

On that flawed base, with no evidence of Monsarrat's state of mind and with no caselaw support Newman improperly contends Monsarrat's infringement action was motivated by bad faith. *Id*. at 12.

Publication of statements of fact, baselessly and falsely accusing Monsarrat of being a pedophile, a sexual predator of young women, is not speech protected by the First Amendment. *Ashcroft v. Free Speech Coalition*, 535 U.S. 234, 245-46 (2002) ("The freedom of speech has its limits; it does not embrace certain categories of speech, including defamation…").

While the Court held the fair use doctrine trumped Monsarrat's right to preclude the use of his copyright as an integral part of Newman's campaign of defamation, there is no basis on

this 12(b)(6) record to find the plausibly stated prima facie copyright infringement claim to have been brought in bad faith.

So too that Newman's reproduction is adjudged to be a fair use cannot fairly be said to vindicate any protected free speech interest.

(e)     Newman's citations in support of his bad faith contention, Doc. 34 at 11-12, are extraordinarily inapposite.

First both *Katz* and the *Mizionikov* cases were decided in the District of Florida where, like the 7th Circuit cases Newman cites, there is a "very strong" presumption in favor of awarding fees to a prevailing defendant.[10]  *Katz,* was a summary judgment case in which the plaintiff testified that only after the defendant had first used a photograph of him did he purchase ownership of the photo and then register his ownership of the copyright for the admitted purpose of stopping the defendant's use. *Katz* v. *Chevaldina*, 127 F. Supp. 3d 1285, 1295, 1300 (S.D. Fla. 2015)

In *Mizioznikov v. Forte,* 2017 U.S. Dis. LEXIS 45587 (S.D. Fla. Mar. 27, 2017) in 2010 the plaintiff photographer took photos of the defendants' minor son; and the parents signed the photographer's proffered release granting him a license "for use in other media for any purpose except pornography or defamation." *Id*. at *1. In 2013 the son's photo appeared on the cover of a book about a "straight-A student [with] a dirty little secret who falls for his new roommate— tattooed bad-boy Max who may or may not be a drug dealer." *Id*. at *2. Considering the book cover "a pornographic and defamatory use of the photograph," the parents sued the photographer in state court and attached a copy of the allegedly actionable book cover to their complaint. *Id.* In

---

[10]     *Katz v. Chevaldina*, 127 F. Supp. 3d 1285, 1297 (S. D. Fla. 2015); *Mizioznikov v. Forte*, 2017 U.S Dist. LEXIS at *18 (awards to prevailing defendants "are the rule rather than the exception and should be awarded routinely."). See *Brownmark Films LLC v. Comedy Partners*, 2011 U.S. Dist. LEXIS 138399, *17-19 (E.D. Wisc. Nov. 30, 2011).

2016, more than six years after first publishing the photograph, the photographer registered the copyright and in federal court sued the parents for copyright infringement alleging their exhibiting of his work as an exhibit to their state court complaint against him to be an infringement. *Id*. at *3.[11] Addressing an issue of first impression in the 11th Circuit the district court held the unauthorized use of the copyright as an exhibit in state court "does not constitute infringement." *Id.* at *16. In determining whether to award fees to the prevailing defendants a factor considered by the district court was the photographer's misleading arguments and "misstate[ments of] the case law *he* cited." *Id*. at **18-19.

In *Bond v Blum*, 317 F. 3d 385 (4th Cir. 2003) abrogated on other grounds by *Kirtsaeng v. John Wiley & Sons, Inc*., 136 S. Ct. 1979 (2016),[12] an extraordinarily inapposite fair use summary judgment case, the plaintiff was an author of an autobiographical manuscript he "hoped to market to publishers for profit." *Id*. at 390. His "Self-Portrait of a patricide: How I got Away with Murder," was a true story detailing how as a 17 year old he planned and in graphic detail how he murdered his father with a hammer. Released after a period of confinement the plaintiff married a divorced woman with children. In a subsequent state court child custody case with the divorced woman's ex-husband the manuscript was used an exhibit in a deposition of the plaintiff's wife. "For the sole purpose of preventing further use of the manuscript" in the custody case the plaintiff "registered a copy of his manuscript with the Copyright Office;" and "immediately" filed a copyright infringement action. *Id.* at 391. Affirming the district court's

---

[11] Unlike the plaintiff Monsarrat with his presumptively valid copyright, because the plaintiff photographer in *Mizioznikov* had obtained a copyright registration more than six years after initial publication of the work he was required to "plead facts to support ownership of a valid copyright." *Id.* at **6-7.

[12] As the Florida district court noted, the Supreme Court decision in *Kirtsaeng* "abrogated the attorney's fee decision in Bond [v Blum]." *Mizioznikov,* 2017 U.S. Dist. LEXIS at *19.

summary judgment decision the Fourth Circuit held the introduction into evidence of that copyrighted manuscript in a state court child custody proceeding constituted fair use

> when the substance of the manuscript was relevant to the issues in the child-custody proceeding and the defendants' use of the manuscript was solely for its content and not for its mode of expression.

*Id*. at 389. While abrogated by *Kirtsaeng* the Fourth Circuit also held that in awarding fees the district court "did not abuse its discretion." 317 F. 3d at 398.[13]

(f) <u>Newman improperly asserts facts not in the record of his state of mind and/or his intent in support of his fee application.</u>

Contending such to be material to an award of fees, Newman postulates that when he "and the other forum moderators decided to move the community to Dreamwidth … he made backup copies to preserve every post in the forum and [then] posted them on Dreamwidth." Doc. 34 at 3. But there is no evidence in the record of any actions by any such "other forum moderators nor is there an affidavit by Newman averring to his state of mind and/or intent. And, it is undisputed the posts remain on LiveJournal and as noted above also have been periodically copied and backed up to the Internet Archive.

(g) <u>Improper contentions concerning Copyrightability; statutory damages; pleading.</u>

In seeking an award of fees Newman improperly contends Monsarrat's post and words had "no creativity and no plausible market" and are intrinsically "not entitled to copyright protection;" and, implies because of what the Court determined to be an undisputed lack of a market for the copyrighted work Monsarrat improperly sought damages. Doc. 34 at 7, 8.

---

[13] On the summary judgment facts the district court had found that in bringing the infringement action the plaintiff author was improperly motivated "to suppress the underlying facts of his copyrighted work rather than to safeguard its creative expression" and thereby "block potentially relevant evidence from being presented" in the child custody proceeding. *Id.* at 397-98. The district court also concluded the author's position "was frivolous." *Id* at 398.

16

But the Court granted judgment that the fair use affirmative defense trumped Monsarrat's well pleaded prima facie infringement claim including on the rule 12 (b)(6) record Monsarrat's ownership of a valid copyright.  And it is well established the lack of any economic value of, or potential market for, the copyrighted work is immaterial to proof of infringement.  And eschewing actual damages for infringement the FAC had requested an award of statutory damages.

(h)     Newman mischaracterizes the FAC and in apparent bad faith assails Monsarrat's litigation conduct for having "raised factually erroneous claims" based on statements "that never appeared … on LiveJournal or Dreamwidth." Doc. 34 at 15-16.

The FAC specifies that the "false and defamatory statements originally posted … on the LiveJournal website [are]… no longer actionable." FAC ¶16. And it is undisputed the FAC alleges no claim against Newman for any statement published on LiveJournal or anywhere other than what on or about April 30, 2017 he had posted on the Dreamwidth website.

After service of the FAC Newman's counsel informed Monsarrat that three of the allegedly defamatory statements complained of by Monsarrat, specifically at FAC ¶21(v), (vii) and (viii), had not in fact been posted by Newman on Dreamwidth.  Goren Aff. ¶3.[14] Regarding the three statements alleged in FAC ¶21(v), (vii) and (viii) Newman asked Monsarrat's counsel to "[p]lease provide URLs where I can find each of them, either on LiveJournal or Dreamwidth." Goren Aff. ¶3. On December 11, 2020, in writing Monsarrat provided Newman with each of the three specific URLs at Dreamwidth at which the defamatory statements had been posted by Newman. *Id*.

---

[14]  Prior to Newman moving to dismiss, Monsarrat's counsel informed Newman that "plaintiff will stipulate to the removal/dismissal of the three allegedly defamatory comments that were not in fact published on Dreamwidth." *Id.*  Newman's November 30, 2020 motion to dismiss, see Doc. 17 at 14 and 14 n.3, referenced the understanding of counsel to the parties. See *id.*

17

Yet less than sixty days later in seeking an award of fees Newman represents to the Court: (i)  Monsarrat had "falsely assert[ed] that 'all three statements … were in fact republished by Newman on Dreamwidth…';" and, (ii) that in his Notice of Errata, (Doc. 23) Monsarrat had "retract[ed the] allegation regarding one of the three statements."  Doc. 34 at 16 n. 5.

E.  *An award of fees would not further the purposes of the Copyright Act.*

On this 12(b)(6) record Newman's "preservationist" use of Monsarrat's copyrighted work, while adjudged to be a "fair use," is quite likely to cause further harm to Monsarrat. Cf. *DeCosta v. Viacom Internnational Inc.*, 981 F. 2d 602, 610 (1st Cir. 1992) (dicta). While adjudged trumped by the fair use doctrine, that the dismissed infringement claim was <u>not</u> objectively unreasonable "can be a relevant indicator" for this discretionary fee factor.  See *Sofa Entm't, Inc. v. Dodger Prods., Inc.*, 709 F.3d 1273, 1280 (9th Cir. 2013) (summary judgment). So too Newman's adjudged preservationist fair use cannot be fairly characterized as building on Monsarrat's work to benefit the public interest by creating a new, transformative work such a parody. See *id*.

F.  *Consideration of the so-called compensation and deterrence factors do not support an award of fees.*

That an award of fees would not further the purposes of the Copyright Act should be dispositive of Newman's contention, Doc. 34 at 12-13, that the so-called "compensation and deterrence" factors warrant a fee award.  While dismissed the prima facie infringement claim was not unreasonable. Improperly relying on immaterial contentions, Newman seems to contend an award of fees vindicates "free speech." *Id*.  Yet Newman's reproduction, while adjudged a fair use, serves to further unlawful speech not shielded by the First Amendment.

Seeking to fit Monsarrat with a bad faith suit worthy of "deterrence," Newman falsely contends he was "dragged into federal court over [his] changing the forum's web host service."

*Id*. at 13. But it is undisputed Newman copied the LiveJournal threads and then reposted the threads, including both the per se defamatory speech and Monsarrat's copyrighted work, on the separate Dreamwidth website. There was no migration of the content or mere change of a single website's web hosting service.

To support his "compensation and deterrence" contention Newman relies on Seventh Circuit law where there "very strong presumption" for an award of fees to a prevailing defendant. Doc. 34 at 12-13[15]. But that is not the law in this Court. *Lotus Dev. Corp. v. Borland Int'l*, 140 F.3d 70, 72-73 (1st Cir. 1998) (prevailing defendants are to be treated "on an even handed basis" with prevailing plaintiffs).

> G. *If in its discretion the Court decides to make an award of fees the requested amount should be adjusted and reduced upon consideration of the same Fogerty factors.*

Even in a case, unlike this one, where the losing party's position is objectively unreasonable the Court has discretion to reduce the requested award upon consideration of the *Fogerty* factors and other equitable considerations. See e.g., *Zamoyski v. Fifty-Six Hope Road Music Limited, Inc.*, 767 F. Supp. 2d 218, 224 (D. Mass. 2011) (e.g., reducing 10% where losing party's position was "objectively unreasonable" but not frivolous) (e.g., reducing a further 10% where no need for deterrence).  See also *Broad. Music, Inc. v. C.B.G., Inc.*, Civil Action No.: 11-cv-40142-FDS, at *9 (D. Mass. Sep. 12, 2014) (reducing a lode star application of approximately $35,000 to $12,000).

If the Court intends to exercise its discretion and make an award of fees to Newman, Monsarrat requests the Court to consider and make findings for a percentage reduction of the lode star request for each of the following factors: (i) Monsarrat's good faith and motivation; (ii)

---

[15] *Brownmark Films LLC v. Comedy Partners*, 2011 U.S. LEXIS 138399 (E. D. Wisc. 2011) *Assessment Techs. of WI, LLC* v. *Wire Data, Inc.*, 361 F.3d 434, 437 (7th Cir. 2004).

19

lack of objective unreasonableness; (iii) lack of frivolousness; (iv) Newman's litigation conduct, i.e., his improper contentions and arguments in support of his fee application; and, (v) furtherance of purposes of Copyright Act.

V. **CONCLUSION.**

For the foregoing reasons the plaintiff Jonathan Monsarrat requests the Court to deny the defendant Ron Newman's motion for an award of fees. In the alternative if the Court determines a fee award is appropriate to limit such award to $10,000.00 or such other amount as the Court determines to be appropriate under the circumstances of the case.

Dated: February 23, 2021.

Respectfully submitted,

JONATHAN MONSARRAT
Plaintiff,
By his attorneys,

/s/ Richard A. Goren
Richard A. Goren, Esq. BBO #203700
Law Office of Richard Goren
29 Crafts Street, Suite 500
Newton MA 02458-1461
617-933-9494
rgoren@richardgorenlaw.com

/s/ Ryan D. Sullivan
Ryan D. Sullivan (BBO#660696)
rsullivan@curranantonelli.com
Curran Antonelli, LLP
10 Post Office Square, Suite 800 South
Boston, MA 02109
617-410-6340

**CERTIFICATE OF SERVICE**

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) on February 23, 2021

/s/Richard A. Goren